Everett L. **TAYLOR** and Jean K.
Taylor, Appellants,

v.

Jefferson **WHITE** and Celeste
Benigno–White, Appellees.

No. 27A02–8704–CV–154.

Court of Appeals of Indiana,
Third District.

March 29, 1988.

Bruce MacTavish, Guerrero, Guerrero &
Guerrero, Marion, for appellants.

Peter G. Tamulonis, John B. Drummy,
Kightlinger & Gray, Indianapolis, Richard
A. Green, Syracuse, Janice Miller, Miller &
Gaudio, Fair Haven, N.J., for appellees.

GARRARD, Presiding Judge.

Everett and Jean Taylor appeal from a
Grant Circuit Court order which vacated

1. This petition is still pending.

their adoption of Phillip Taylor. The dispositive issue raised by this appeal is whether the trial court erred in concluding that the decree of adoption was invalid because the Taylors failed to seek and obtain the consent of Jefferson and Celeste White and the consent of a New Jersey Superior Court which had entered an order giving the Taylors and the Whites joint custody of Phillip. We affirm.

This appeal is the result of an adoption procured by Everett and Jean Taylor, the paternal grandparents of the adopted child, Phillip Taylor. Phillip was five months old on November 11, 1984 when his natural father, Dr. Kenneth Taylor, murdered his mother in the family's New Jersey home. After murdering his wife, Kenneth drove to Marion, Indiana and left Phillip with the Taylors. Kenneth then returned to New Jersey where he was arrested and charged with the murder. Upon their son's arrest, the Taylors traveled to New Jersey, taking Phillip with them.

On November 27, 1984, a New Jersey court entered an order giving Phillip to Jefferson and Celeste White, Phillip's maternal aunt and her husband and to the Taylors. Although the joint custody order was to remain in effect until September 1, 1985, the Whites filed for custody of Phillip in December of 1984. The Taylors petitioned for adoption on June 14, 1984.[1] As a result of these petitions, the New Jersey court declared Phillip to be a ward of the court. On June 18, 1985, Kenneth Taylor was convicted of first degree murder and subsequently was sentenced to life imprisonment.

On September 19, 1985, the New Jersey court awarded the Whites custody of Phillip from September 1st to June 30th of each year. The Taylors were to have custody during July and August and from December 26th through January 1st of each year. On December 27, 1985, however, the Whites filed a petition for custody of Phillip in the Family Court of New York, the Whites' state of legal residence. On that same day, the New York court ordered the Taylors not to take Phillip for "visita-

tion" without appearing before it. Apparently the Taylors did not appear before the New York court or have custody of Phillip during their scheduled period in December of 1985.[2] On January 12, 1986, however, the Taylors filed a petition[3] to adopt Phillip in the Grant Circuit Court. Kenneth Taylor's consent to the adoption was filed on January 28, 1986.[4]

In addition to filing a petition to adopt Phillip with the Grant Circuit Court, in May 1986 the Taylors filed a petition with the New Jersey court requesting it to enforce its September 19, 1985 custody order. The Whites filed a cross-motion for modification of the order. Hearings on these two motions were completed on August 1, 1986 when an agreement was reached between the parties giving the Taylors visitation with Phillip in Indiana from August 1, 1986 to August 16, 1986.

After reaching the agreement, the Taylors drove Phillip to Marion where the Grant Circuit Court entered its decree of adoption on August 7, 1986. Neither the Whites nor the New Jersey court was aware that a petition for adoption had been pending in Indiana. Further, the Taylors had not sought or obtained the Whites' or the New Jersey court's consent to the adoption. The Whites learned of the adoption when Celeste telephoned Jean Taylor on August 7, 1986 and was informed by Jean that the Taylors had adopted Phillip and that the Whites would never see him again.

On August 11, 1986, the Whites filed their motion to vacate the adoption. This motion was amended twice with the second amended motion being filed with a motion to intervene. The motion to intervene was granted and a hearing on the motion to vacate was held on December 2, 1986. The

2. The New York court later dismissed the Whites' petition on the basis that the New Jersey court had jurisdiction of the custody matter.

3. The petition failed to mention that Phillip's father was incarcerated in New Jersey for murdering Phillip's mother and that Phillip had been declared a ward of the New Jersey court. Further, the petition declared that Phillip had resided with the Taylors from November 12, 1984 to September 1, 1985. During the vast majority of that time period, Phillip was residing in his parents' New Jersey home with Jean Taylor and the Whites. The petition also stated that Phillip did not have any property when the Taylors were aware that the New Jersey court had appointed a guardian to collect and preserve his natural parents' assets. The assets amounted to approximately $110,000.00. A petition for adoption requires the petitioners to specify the name and residence of the child's natural parents, if known, the period of time during which the child has lived in the home of the petitioners if there is such a period, the name of the court of which the child is a ward if he is a ward of a court, and the value and description of any property the child possesses. IC 31-3-1-2 (1982 & Supp.1987). The trial court found the defects in the petition justified setting the adoption aside. The Taylors argue that the defects were minor and did not deprive the court of jurisdiction to enter the adoption decree. (Appellant's Brief, p. 24 citing *Matter of Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777). The Taylors also rely upon the fact that the welfare department's report contained the omitted facts, presumably arguing that the report cured any material defects contained in

their petition. This report, however, was not filed until the day the adoption was granted. The Whites contend that the defects were material procedural defects which required the adoption to be vacated. (Appellee's Brief, p. 22 citing *Emmons v. Dinelli* (1958), 235 Ind. 249, 133 N.E.2d 56; *In re Adoption of Chaney* (1958), 128 Ind.App. 603, 150 N.E.2d 754; *Petition of Gray* (1981), Ind.App., 425 N.E.2d 728). They further contend that even if the defects were minor, thereby not depriving the court of jurisdiction to enter the decree, the trial court did not abuse its discretion by vacating the decree on the basis of the defects. (Appellee's Brief, p. 23 citing *First National Bank v. Coling* (1981), Ind.App., 419 N.E.2d 1326, 1331.) Because the trial court was justified in vacating the adoption due to lack of consent by the Whites and the New Jersey court, it is unnecessary for this court to reach the issue regarding the defects contained in the Taylors' petition for adoption and whether the defects, if material, were cured by the welfare department's report.

4. Kenneth Taylor's consent was not properly executed. *See* IC 31-3-1-10 (1982 & Supp. 1987); N.J.S.A. 9:3-41 (Supp.1987-88) N.J.S.A. 46:14-6 (1940 & Supp.1987-88). The trial court found that the consent therefore was invalid and justified setting the adoption aside. The Taylors contend that only Kenneth Taylor could challenge his consent, not the Whites (Appellant's Brief, pp. 24-29). Because the trial court was correct in vacating the adoption due to lack of consent by the Whites and the New Jersey court, it is unnecessary for this court to determine the validity of Kenneth Taylor's consent and who had standing to challenge it.

order vacating the adoption was entered on April 10, 1987 with the trial judge specifically finding that the adoption decree was invalid due to lack of consent by the Whites and the New Jersey court.[5] This appeal ensued.

The Taylors argue that the consents of the Whites and the New Jersey court were unnecessary and rely upon two Indiana cases which held that the consent of a guardian and notice to him of the adoption hearing is not required. *Buck v. Squires* (1924), 194 Ind. 112, 142 N.E. 7; *Leonard v. Honisfager* (1909), 43 Ind.App. 607, 88 N.E. 91. These cases, however, are distinguishable from the present one due to different provisions in the applicable adoption statutes. They were decided under statutes which prohibited adoptions without the parents' consent unless the parents' residence was unknown or the child was institutionalized for reasons other than conviction of a crime or incorrigibility. *See* Ind.Code Ann. § 917 (Burns 1921); Ind. Code Ann. § 872 (Burns 1908). Neither of those statutes contained a list similar to the one contained in our present consent statute and the cases which rely upon them are therefore inapplicable.

The Indiana statute pertaining to whose consent is required in adoption proceedings provides:

Except as otherwise provided in this section, a petition to adopt a child under eighteen (18) years of age may be granted only if written consent to adoption has been executed by:

(1) each living parent of a child born in wedlock;

(2) the mother of a child born out of wedlock and the father of such a child whose paternity has been established by a court proceeding;

(3) any person, agency, or county department of public welfare having lawful custody of the child whose adoption is being sought;

(4) the court having jurisdiction of the custody of the child, if the legal guardian or custodian of the person of the child is not empowered to consent to the adoption;

(5) the child to be adopted, if more than fourteen (14) years of age; or

(6) the spouse of the child to be adopted.

IC 31–3–1–6(a) (1982 & Supp.1987). The Taylors argue that the word "or" between subsections five and six of this statute should be interpreted literally and that un-

---

5. In its finding on this issue, the court stated:

That while the Indiana adoption statute does not specifically require notice of adoption proceedings where a parent has given consent, the spirit of the statute requires notice to guardians, court or agencies having custody or direct contact with the child.

(R. 208). The court is required to give notice of the hearing to parents, putative fathers, other necessary parties, and such interested parties as the court in its discretion may direct. IC 31–3–1–6(e) (1982 & Supp.1987). The Taylors have briefed this case in terms of notice being required *only* if consent to the adoption is required. (Appellant's Brief, pp. 22–23), thereby implying that "necessary parties" include only those persons whose consent is required prior to the entry of the decree. While this characterization of "necessary parties" may be too limited in scope, we do not need to address the issue as both the Whites' and the New Jersey court's consent to this adoption were required. They therefore were "necessary" parties entitled to receive notice even under the Taylors' limited definition of the term. Furthermore, if "necessary parties" are those whose consent to the adoption is required, as the Taylors suggest, IC 31–3–1–6(e) supports our conclusion that con-

sent must be obtained from all parties listed in IC 31–3–1–6(a) to the extent that they exist. IC 31–3–1–6(e) provides in relevant part:

The court shall cause notice of hearing and opportunity to file objection to be given to parents, putative fathers, *other* necessary parties and such interested parties as the court in its discretion may direct.

IC 31–3–1–6(e) (1982 & Supp.1987) (emphasis added). *See also Petition of Gray* (1981), Ind. App., 425 N.E.2d 728, 729. The statute contemplates that there may be parties other than the child's parents who are necessary to the adoption proceeding and requires that notice be sent to those parties in addition to the child's parents. Because the court is required by IC 31–3–1–6(e) to give notice to "necessary parties" other than the child's parents, consent from such parties would also be required under the Taylors' argument that notice is required only if consent is required. It should be noted, however, that notice may be required to be given to persons other than those whose consent is required and that once a required consent is obtained, no notice may be necessary. *See Matter of Adoption of Konar* (1983), Ind.App., 454 N.E.2d 886 cert. denied 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 203.

der such an interpretation the statute creates a hierarchy of persons whose consent is required prior to an adoption. They therefore contend that because they had the consent of Kenneth Taylor, Phillip's only living parent, they needed no one else's consent.

Terms such as "or" generally should be given their literal and normal definition. *Dague v. Piper Aircraft Corp.* (1981), Ind., 418 N.E.2d 207, 211.

> This court [however] is not bound to blindly give effect to the word 'or' when a disjunctive reading of the terms of the statute would render meaningless a portion of the statute. Likewise, the term 'or' should not be given its ordinary meaning when such an application flies in the face of a clearly contrary legislative intent.

*Id.*

Placing a disjunctive interpretation upon the term "or" as contained in IC 31–3–1–6(a) so as to create a hierarchy of persons whose consent to an adoption is required would render portions of the statute meaningless. Assume, for example, that a fifteen year old child is in the custody of the county welfare department pursuant to a court order. Under a disjunctive interpretation of the term "or" an adoption could be entered with the consent of the child's natural living parents but without the consent of the welfare department, the court which entered the custody order, or the child. Such an interpretation would render subsections three, four and five of the consent statute meaningless, and is an interpretation which clearly was not intended by our legislature.

> [T]he courts have power to change ... 'and' to 'or' and vice versa, whenever

such conversion is *required by the context, or is necessary to harmonize the provisions of a statute and give effect to all of its provisions, or save it from unconstitutionality or,* in general, *to effect the obvious intention of the legislature.*

*Indiana Department of State Revenue v. Stark–Wetzel and Company* (1971), 150 Ind.App. 344, 353, 276 N.E.2d 904, 910 quoting Sutherland, *Statutory Construction* Sec. 4923 (Supp.1971). In order to give effect to all of the provisions of the consent statute and to effect the obvious intent of the legislature, it is necessary that the term "or" be interpreted to mean "and" to the extent that any of the enumerated classifications exist. This court therefore adopts that interpretation.

Phillip Taylor was in the custody of the Whites and the New Jersey court had jurisdiction of Phillip's custody when the decree was entered. In addition to Kenneth Taylor's consent, the consent of the Whites and the New Jersey court were required. A decree of adoption may be entered *only* if the required consents were obtained.[6] IC 31–3–1–6(a). As the Taylors failed to obtain all of the required consents, the judgment of adoption was voidable. The court did not err in setting the adoption aside.

Affirmed.

HOFFMAN and SULLIVAN, JJ., concur.

---

6. There are provisions in the adoption statute which eliminate the necessity of consent under various circumstances. *See* IC 31–3–1–6(g) (1982 & Supp.1987); IC 31–3–1–6.1 (1982 & Supp.1987). As none of those provisions are applicable to this case, they have not been discussed.