# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indinapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL J. LAYDEN**
**MICHELLE L. FINDLEY**
Williams Barrett & Wilkowski, LLP
Greenwood, Indiana

FILED

Apr 22 2014, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION | ) | |
| OF B.C.H., a Minor | ) | No. 41A04-1308-AD-388 |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Kevin M. Barton, Judge
Cause No. 41D01-1011-AD-38

**April 22, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

T.H. ("Grandfather") and C.H. ("Grandmother") (collectively, "Grandparents") appeal the trial court's order denying their motion for relief from judgment and motion to correct error concerning their son-in-law's ("Stepfather") adoption of their minor granddaughter, B.C.H.

We affirm.

## ISSUES

1. Whether the trial court abused its discretion in denying Grandparents' motion for relief from judgment based on its determination that Grandparents were not parties that were required to receive notice of, and give consent to, Stepfather's adoption of B.C.H.

2. Whether the trial court abused its discretion in denying Grandparents' motion to correct error.

## FACTS

R.J. ("Mother") gave birth to B.C.H. on November 29, 2007, when she was seventeen years old. At the time, Mother was not married to B.C.H.'s biological father and still attended high school. However, she lived on her own in an apartment. After B.C.H.'s birth, Grandmother stayed at Mother's apartment for several days to help her care for B.C.H. When B.C.H. was five days old, Mother took her to Grandparents' house and stayed there for two weeks. Subsequently, Mother returned to her apartment and left B.C.H. with Grandparents. From that point until B.C.H. was two years and three months old, Grandparents provided for almost all of B.C.H.'s care. Mother visited about once a week.

2

In February 2008, Mother initiated paternity proceedings in the Johnson County Juvenile Court, and the juvenile court awarded her sole custody of B.C.H. Nevertheless, Grandparents continued to care for B.C.H. Two years later, in February 2010, Mother began to keep B.C.H. at her apartment at least one day and night each week. That same year, Mother married Stepfather.

On November 29, 2010, Mother and Stepfather initiated proceedings in the Johnson County Superior Court for Stepfather to adopt three-year-old B.C.H. Grandparents did not receive legal notice of the adoption or consent to it, although they were aware that Stepfather had filed the petition for adoption. During the pendency of the proceedings, Mother gave birth to another child and did not see B.C.H. for about four weeks. However, when B.C.H.'s newborn sister was about a month old, Mother and Stepfather began to keep B.C.H. at their residence around two days per week.

On August 15, 2011, the trial court entered a decree of adoption granting Stepfather's petition to adopt B.C.H. Subsequently, on September 4, 2011, Mother and Stepfather took physical custody of B.C.H. On September 14, 2011, Grandparents filed a verified motion seeking legal custody of B.C.H in the Johnson County Juvenile Court, which had already awarded sole custody to Mother. Their motion was premised on the argument that they already qualified as de facto custodians of B.C.H. due to their longstanding care of her. Under Indiana Code § 31-9-2-35.5, a de facto custodian is "a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least: (1) six (6) months if the child is less than three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age." The

3

juvenile court held a hearing on the motion on November 15, 2011, and, on February 6, 2012, entered an order granting Grandparents de facto custodian status and ordering a custody proceeding. In its order, the juvenile court also held that Grandparents' de facto custodian status qualified them for visitation rights according to the Indiana Parenting Time Guidelines, as well as the right to seek legal custody of B.C.H. As of the time of this appeal, the custody proceedings the juvenile court ordered were still ongoing.

On May 1, 2012, Grandparents moved to reopen Stepfather's adoption of B.C.H. and to intervene. In their motion, they argued that the trial court had abused its discretion in granting the adoption without providing them with notice and without receiving their consent. Pursuant to Indiana Code § 31-19-9-1(a)(3), a trial court may only grant a petition to adopt a child who is less than eighteen (18) years of age if it receives written consent from "[e]ach person, agency, or local office having lawful custody of the child whose adoption is being sought." Grandparents argued that they had "lawful custody" of B.C.H. during the adoption proceedings because they were de facto custodians at the time, even though the juvenile court had yet to adjudicate their status as such.

On May 5, 2012, the trial court ordered a limited grant of Grandparents' motion in order to determine: (1) the legal question of "[w]hether a de facto custodian who is not acting under Court Order is a 'lawful custodian' . . . " for purposes of Indiana Code § 31-19-9-1(a)(3); and (2) whether Grandparents' consent was therefore required for the adoption. (Grandparents' App. 8). The trial court also granted the motion for the purpose of permitting Grandparents to file a motion under Indiana Trial Rule 60(B), which allows the trial court to grant relief from a judgment or order. A complicated

4

series of motions followed in which Grandparents attempted to obtain the transcript from the adoption proceedings in order to file an informed Trial Rule 60(B) motion.[1] The trial court denied their motions on the basis that—because adoption proceedings are confidential—it could not grant Grandparents a copy of the transcript until they filed a Trial Rule 60(B) motion and the trial court determined they were proper parties to the adoption proceeding.

Finally, on April 26, 2013, Grandparents filed a Trial Rule 60(B) motion for relief from judgment and a Trial Rule 59 motion to correct error, each seeking to set aside the trial court's adoption decree. In their motions, Grandparents presented legal arguments with respect to the trial court's two questions from its May 5, 2012 order. On May 13, 2013, Mother and Stepfather filed a statement in opposition to Grandparents' motions. The trial court held a hearing on the motions on June 10, 2013 and denied both on July 10, 2013. Grandparents now appeal.

## DECISION

### A. Motion for Relief from Order

Grandparents' primary argument on appeal is that the trial court abused its discretion when it denied their Trial Rule 60(B) motion for relief from judgment because Stepfather's adoption was void without their consent as de facto custodians. On the same premise, they also argue that the adoption was void because they did not receive legal

---

[1] It is apparent that Grandparents wanted the transcript in order to determine whether Mother and Stepfather had committed fraud during the adoption proceedings by failing to notify the trial court that Grandparents had physical custody of B.C.H. Fraud is a ground for relief under Trial Rule 60(B).

5

notice of the adoption. Both of these arguments are grounded in Title 31, Article 19 of the Indiana Code which governs adoption of minors.

Pursuant to Indiana Code § 31-19-9-1, a trial court may only grant a petition to adopt a child who is less than eighteen (18) years of age if written consent has been executed by "[e]ach person, agency, or local office having lawful custody of the child whose adoption is being sought." Likewise, Indiana Code § 31-19-2.5-3 provides that notice must be given to a "person whose consent to adoption is required under [I.C. §] 31-19-9-1." The trial court equated Indiana Code § 31-19-9-1's phrase "lawful custody" with "legal" custody and, based on this interpretation, determined that Grandparents' consent was not required for the adoption because they did not have court-ordered custody of B.C.H.

On appeal, Grandparents argue that they had lawful custody of B.C.H. during the adoption proceedings because they qualified as de facto custodians by statute, even though the juvenile court had not yet adjudicated them as such. In order to address these arguments, there are two components to this issue that we must consider: (1) whether the phrase "lawful custody" is equivalent to the phrase "legal custody" for purposes of Indiana Code § 31-19-9-1, such that a lawful custodian must be court ordered; and (2) whether Grandparents qualified as lawful custodians by meeting the statutory qualifications for being de facto custodians. These are both questions of first impression in Indiana, and we will address each in turn.[2]

---

[2] Mother and Stepfather argue that these are not issues of first impression because the rights of non-custodial grandparents are well-settled in our case law, as are the requirements for legal custody. However, this argument misconstrues the issues before us. Labeling Grandparents "non-custodial"

6

First, we note that a motion made under subdivision (B) of Trial Rule 60 is addressed to the "equitable discretion" of the trial court. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740-41 (Ind. 2010). We will only disturb the grant or denial of the motion when the trial court has abused that discretion. *Id.* at 741. An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts before it and the inferences which may be drawn therefrom, or if the trial court has misinterpreted the law. *Id.*; *Rothschild v. Devos*, 757 N.E.2d 219, 222 (Ind. Ct. App. 2001). Questions of law we review de novo. *In re Paternity of M.M.B.*, 877 N.E.2d 1239, 1242 (Ind. Ct. App. 2007).

1. *Lawful Custody*

Because neither the Indiana Code nor common law have defined the term "lawful custody," we must interpret the adoption statute in order to construe its meaning. Statutory interpretation is a question of law reserved for the court. *In re N.S.*, 908 N.E.2d 1176, 1180 (Ind. Ct. App. 2009) (quoting *Shaffer v. State*, 795 N.E.2d 1072, 1076 (Ind. Ct. App. 2003)). We will give an unambiguous statute its clear and plain meaning. *McCabe v. Comm'r, Ind. Dep't Ins.*, 949 N.E.2d 816, 819 (Ind. 2011). However, when a statute is susceptible to more than one interpretation, we will deem it ambiguous and thus open to judicial construction. *In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (quoting *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007)).

---

bypasses the very questions we must address—whether they were de facto custodians prior to the adoption proceedings and whether they therefore had lawful custody. Our analysis depends on the meaning of the phrase "lawful custody" and our interpretation of the de facto custodian provisions. Indiana courts have never addressed either of these issues.

7

The meaning of the phrase "lawful custody" is primarily dependent on the modifier "lawful," which is ambiguous and susceptible to multiple interpretations. Although the trial court interpreted lawful as meaning "court ordered," Black's Law Dictionary ("Black's") defines it as "[n]ot contrary to law" or "permitted by law." BLACK'S LAW DICTIONARY 902 (8th ed. 2004). Under either of Black's definitions, "lawful custody" could include situations where a custodian has physical custody of a child—or de facto custody—since neither of those custody arrangements is contrary to law, but not court-ordered custody. This result starkly contrasts with the trial court's much narrower interpretation, which would only include court-ordered custodians. As a result of this ambiguity, we conclude that the phrase "lawful custody" is open to judicial construction.

When confronted with a question of statutory construction, our primary goal is to determine and effectuate legislative intent. *In re S.H.*, 984 N.E.2d 630, 634 (Ind. 2013). The words of the statute are the best evidence of that intent, and we therefore begin our analysis with those words. *Id.* at 635. We presume they were "selected and employed to express their common and ordinary meanings." *Id.* (citing *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 886 N.E.2d 775, 778 (Ind. 2007)). We also read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *In re Paternity of H.H.*, 879 N.E.2d at 1177 (quoting *City of Carmel,* 865 N.E.2d at 618). We do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.*

8

In interpreting the word "lawful," it is clear that the trial court equated "lawful" with "legal" because it lists several interpretations of the word "legal" to support its decision. For instance, the trial court noted that, according to American Jurisprudence Second, the "'legal custodian' of a child is one who has been given legal custody by court order." (Grandparents' App. 10). The trial court also cited to an explanation in American Jurisprudence Second that "'legal custody' refers to the responsibility for making major decisions regarding the child and is a status that may be held by a parent who does not have 'physical custody,' which refers to the responsibility for the physical care and immediate supervision of the child." (Grandparents' App. 10). Throughout its order, the trial court referred to the word "legal," but did not cite to any law or legal authority regarding the meaning of the word "lawful," which is the actual language of the statute. We do not agree with the trial court's reliance on the term "legal" because, although it is one common and ordinary meaning of the word "lawful," "not contrary to law" is another, equally common and ordinary meaning. Further, the choice between these two meanings is significant because, as we noted above, if "legal" means "court ordered" and "lawful" means "not contrary to law," the phrase "lawful custody" has a potentially more expansive impact than "legal custody."

Because we cannot determine the Legislature's intent based on the ordinary meanings of the words of the statute alone, we turn to the statute as a whole. Nothing in the adoption statute supports an interpretation that would grant a custodian having lawful physical, but not legal, custody of a child the same legal rights as a custodian having

court-ordered custody.[3] Instead, we are persuaded by the trial court's reasoning. As the trial court recognized, adoption statutes are in derogation of the common law and, therefore, must be strictly construed. *Matter of Paternity of Baby Girl*, 661 N.E.2d 873 (Ind. Ct. App. 1996). The trial court noted that Indiana historically did not even recognize a legal guardian as a necessary party to adoption proceedings. *See Leonard v. Honisfager*, 88 N.E. 91 (Ind. Ct. App. 1909) ("If the child have [sic] parents living, they alone can interpose objections to the order of adoption in a proper case. . . . While for many purposes, the legal guardian of the child does stand in the place of the parent, the statute does not require his consent to give validity to an order of adoption of his ward."). Under our current law, a legal guardian is defined as "a person appointed by a court to have the care and custody of a child or the child's estate, or both." I.C. § 31-9-2-49. Because a guardian has court-ordered custody, we would now interpret a guardian as having "lawful custody" under even our narrowest construction of the phrase. This example is illustrative of the extent to which the adoption statute derogates from common law.

In light of this common law history of disfavoring the right of any party other than a child's parents to object to an adoption, we hold that the adoption statute's use of the

[3] Mother and Stepfather point to the phrasing of Section 31-19-9-1(a)(3) to argue that a more expansive interpretation of lawful is inappropriate here. They contend that if the Legislature had intended Section 31-19-9-1(a)(3) to encompass all people having actual care and custody of a child within a certain period of time, it would not have modified the term custody with the adjective lawful. The word custody alone would suffice to convey that meaning. However, we conclude that while interpreting lawful as "not contrary to law" does include a wider range of people having actual care and physical custody of a child, it has a narrower application than the term custody alone. The term custody alone could include physical custody prohibited by law, such as instances of kidnapping, whereas the term lawful custody precludes unlawful custody under any interpretation. Accordingly, lawful custody still has a different effect than the word custody alone under even the most expansive interpretation of lawful.

10

phrase "lawful custody" under Ind. Code § 31-19-9-1(a)(3) is equivalent to "legal custody," that is, court-ordered custody. Absent clear language from the Legislature, it is not our place to create a right where it has never before existed.

Likewise, because the trial court is only required to give notice to a "person whose consent to adoption is required under [I.C. §] 31-19-9-1," we also will not create a right for parties without legal custody of a child to receive notice of adoption proceedings. *See* I.C. § 31-19-2.5-3. Grandparents note that there are instances where the Indiana Code requires notice to certain individuals even when their consent is not required. In support of this proposition, they cite Indiana Code § 31-19-4.5-2, which states that "if a petition for adoption alleges that consent to adoption is not required under [I.C. §] 31-19-9-8, notice of the adoption must be given to the person from whom consent is allegedly not required under [I.C. §] 31-19-9-8." In turn, Indiana Code § 31-19-9-8 lists several instances where consent from certain individuals is not required. The only provision potentially applicable to Grandparents is Indiana Code § 31-19-9-8(a)(10), which states that consent is not required from "[a] legal guardian or lawful custodian of the person to be adopted who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child." However, this requirement is not relevant to Grandparents for two reasons. First, Grandparents have not claimed that they failed to consent to the adoption for reasons found by the court not to be in B.C.H.'s best interests. Second, as we will address in the next section, Grandparents do not qualify as legal guardians or lawful custodians.

2. *Grandparents' De Facto Custodian Status*

11

Because we have determined that the adoption statute's reference to a person having "lawful custody" refers to an individual with legal custody of a child, we must next consider whether Grandparents had legal custody of B.C.H. as a result of their status as de facto custodians. One primary consideration with respect to this question is whether, as the trial court determined, legal custody means custody granted by court order. If it does, Grandparents point to the juvenile court's order finding them to be de facto custodians. If not, they argue that they became lawful custodians prior to the adoption proceedings by operation of the de facto custodian statute.

Mother and Stepfather respond to Grandparents' first argument by arguing that Grandparents' adjudication as de facto custodians does not impact the adoption proceedings because it occurred after the trial court issued the decree of adoption. We agree with the trial court that legal custody means custody granted by court order rather than by operation of statute. However, we need not address the temporal issues concerning the juvenile court's order adjudicating Grandparents to be de facto custodians because we conclude that an adjudication of de facto custodianship, even by order of the court, is not equivalent to an award of legal custody.

With respect to whether legal custody must be court ordered, we note that the trial court's two references to American Jurisprudence Second (AJS) are relevant here. The trial court cited to AJS, which states that the "'legal custodian' of a child is one who has been given legal custody by court order." 59 AM. JUR. 2D *Parent and Child* § 26 (2013). Similarly, "'legal custody' refers to the responsibility for making major decisions regarding the child and is a status that may be held by a parent who does not have

12

'physical custody,' which refers to the responsibility for the physical care and immediate supervision of the child." 59 AM. JUR. 2D *Parent and Child* § 26 (2013). We find the AJS's definition of legal custody persuasive because it reflects the Indiana Code's procedural requirements. In many provisions of Indiana Code § 31-17-2, which is the Code's chapter concerning actions for child custody and modification of child custody orders, the statutory language implies that the court alone determines legal custody. Under Indiana Code § 31-17-2-3, "[a] child custody proceeding is commenced *in the court . . . .*" (emphasis added). Likewise, according to Indiana Code § 31-17-2-8, "*The court* shall determine custody and enter a custody order in accordance with the best interests of the child." (emphasis added). Based on these factors, we agree with the trial court that a custodian may only obtain legal custody through a court order.[4]

Next, Grandparents argue that they qualified as legal custodians, even when legal custody is defined as court-ordered custody, because the juvenile court issued an order finding them to be de facto custodians. We disagree. Pursuant to Indiana Code § 31-9-2-35.5, a de facto custodian is "a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least: (1) six (6) months if the child is less than three (3) years of age; or (2) one (1) year if the child is at

---

[4] We also do not agree with Grandparents' contention that the decisions in *Taylor v. White*, 520 N.E.2d 475 (Ind. Ct. App. 1988) and *In re Matter of the Adoption of L.C.E.*, 940 N.E.2d 1224 (Ind. Ct. App. 2011) support their argument that their consent was required for B.C.H.'s adoption. In each of these cases, the parties challenging the trial court's grant of an adoption without their consent had custody pursuant to court proceedings. In *Taylor v. White*, this Court decided that a maternal aunt's consent to an adoption was required because the aunt had custody by virtue of a New Jersey court order. 520 N.E.2d at 478. Likewise, we required a stepfather's consent to an adoption in *In re Matter of the Adoption of L.C.E.* when the stepfather had received custody pursuant to an agreed entry filed with the court and subsequently adopted as the trial court's order. 940 N.E.2d at 1225. These holdings are consistent with our determination that lawful custody must be court ordered.

13

least three (3) years of age." Under Indiana Code § 31-14-13-2.5, once the court has found "by clear and convincing evidence that the child has been cared for by a de facto custodian," it may consider additional factors in determining custody, such as the wishes of the child's de facto custodian. *See* I.C. § 31-14-13-2.5(b)(1). In other words, this section of the code merely delineates *factors* for determining custody, which inherently implies that qualification as a de facto custodian—even through court order—does not automatically result in legal custody. It is merely one factor in support of an award of legal custody. Indiana Code § 31-14-13-2.5(e) explicitly supports this conclusion, stating that: "If the court awards custody of the child to the child's de facto custodian, the de facto custodian is considered to have legal custody of the child under Indiana law." I.C. § 31-14-13-2.5(e). The conditional nature of this statement expresses that unless a court awards custody to a de facto custodian, we should not consider that custodian as having legal custody of a child.

Accordingly, we conclude that even if we assume that Grandparents' adjudication as de facto custodians was timely, they did not have legal or lawful custody of B.C.H. during the adoption proceedings because the court had only awarded them de facto custodianship status, not legal custody. As we find that Grandparents did not have lawful custody of B.C.H., we likewise conclude that the trial court did not abuse its discretion in denying their motion for relief from judgment.

B. <u>Motion to Correct Error</u>

Next, Grandparents argue that the trial court abused its discretion when it denied their motion to correct error. In its order, the trial court determined that Grandparents did

14

not have standing to assert error in the adoption because they were not parties to the proceedings. The trial court also found that Grandparents could not file their motion to correct error more than thirty days after the decree of adoption. We agree with both of these conclusions.

In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied.* As stated above, an abuse of discretion occurs when the trial court's action is against the logic and effect of the facts before it and the inferences which may be drawn therefrom, or if the trial court has misinterpreted the law. *In re Paternity of P.S.S.,* 934 N.E.2d at 741; *Rothschild v. Devos*, 757 N.E.2d 219, 222 (Ind. Ct. App. 2001). To the extent the issues are purely questions of law, our review is de novo. *City of Indianapolis*, 932 N.E.2d at 230.

Indiana Code § 31-19-10-1(a) specifies that, "Except as provided in subsection (c), only a person entitled to notice of adoption under [I.C. §] 31-19-4 or [I.C. §] 31-19-4.5 may contest an adoption." The exception listed in subsection (c) is for "a person seeking to withdraw consent to an adoption," which is not relevant to Grandparents. I.C. § 31-19-10-1(c). Additionally, Trial Rule 59(C) declares that "[a] motion to correct error, if any, shall be filed not later than thirty (30) days after the entry of a final judgment is noted in the Chronological Case Summary."

In light of both of these provisions, we conclude that the trial court did not abuse its discretion in denying Grandparents' motion to correct error. They are not entitled to contest the adoption under Indiana Code § 31-19-10-1(a) because they are not persons

15

that are entitled to notice. Further, they filed their motion to correct error on April 26, 2013, well over thirty days past the trial court's issuance of its final decree of adoption on August 15, 2011.

Affirmed.

MATHIAS, J., concurs in result with opinion.

BRADFORD, J., concurs.

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE ADOPTION OF:   )
B.C.H.   )
     A Minor.   )   No. 41A04-1308-AD-388
   )
   )
   )

**MATHIAS, Judge concurs in result**

Because I would conclude that Stepfather was required to obtain Grandparents' consent to his adoption of B.C.H. pursuant to Indiana Code section 31-19-9-1(a)(3), but that Grandparents had actual notice of the adoption proceedings and did not attempt to contest the adoption, I concur in result.

The majority observes that the phrase "'lawful custody' has a potentially more expansive impact than 'legal custody'", but also concludes that "the adoption statute's use of the phrase 'lawful custody' under Indiana Code section 31-19-9-1(a)(3) is equivalent to 'legal custody,' that is, court-ordered custody." Slip op. at 9-11. I disagree.

Our rules of statutory construction are well-settled, and "the first rule of statutory construction is that '[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense.'" State v. Prater, 922 N.E.2d 746, 749 (Ind. Ct. App. 2010), trans. denied. Merriam-Webster defines lawful as "being in harmony with the law" and "constituted, authorized, or established by law." See www.merriam-webster.com/dictionary/lawful

17

last visited on March 27, 2014. Similarly, the Oxford English Dictionary provides the following definition: "[a]ccording or not contrary to law, permitted by law" and [a]ppointed, sanctioned, or recognized by law[.]" See www.oed.com last visited on March 27, 2014.

Mother voluntarily relinquished custody of B.C.H. to Grandparents shortly after the child was born. Because Grandparents were B.C.H.'s primary caregivers, lived with and financially supported her, the Johnson Juvenile Court determined that Grandparents qualified as B.C.H.'s de facto custodians.[5] Under these circumstances, and under the plain meaning of the term "lawful," I would conclude that Grandparents had "lawful" custody of B.C.H., and therefore, notice of Stepfather's adoption petition and Grandparent's consent to B.C.H.'s adoption was required under Indiana Code sections 31-19-2.5-3 and 31-19-9-1.

Although Grandparents' consent to the adoption was not sought, Grandparents had actual notice that Stepfather had initiated adoption proceedings. But Grandparents failed to intervene in or to contest the adoption proceedings; therefore, I would hold that Grandparents cannot challenge the decree of adoption at this late date. For this reason, I concur in the result reached by the majority.

---

[5] "The apparent intent of the de facto custodian statute is to clarify that a third party may have standing in certain custody proceedings[.]" See K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 462 (Ind. 2009); see also Nunn v. Nunn, 791 N.E.2d 779,783 (Ind. Ct. App. 2003) (stating that "[i]n 1999, . . . the legislature amended the statutes governing certain custody proceedings to allow "de facto" custodians to be parties in [custody] proceedings").