ATTORNEYS FOR APPELLANTS
Bryan L. Ciyou
Lori B. Schmeltzer
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Daniel J. Layden
Michelle L. Findley
Williams Barrett & Wilkowski, LLP
Greenwood, Indiana

FILED

Dec 23 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 41S04-1408-AD-515

IN RE THE ADOPTION OF B.C.H.

Appeal from the Johnson Superior Court, No. 41D01-1011-AD-38
The Honorable Kevin M. Barton, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 41A04-1308-AD-388

**December 23, 2014**

**David, Justice.**

For the first forty-five months of her life, B.C.H. remained in the primary care, custody, and control of her maternal grandparents T.H. and C.H. ("Grandparents"). Unmarried at the time of B.C.H.'s birth, her mother R.H. ("Mother") would visit her daughter about once a week. Later, Mother began keeping B.C.H. at her apartment one day and night per week, and when Mother married K.J. ("Stepfather"), these visits increased to twice weekly. In November 2010, Stepfather, with Mother's consent, filed a petition to adopt B.C.H. The Grandparents were not served with legal notice nor given an opportunity to give or withhold their consent to her

adoption. B.C.H.'s adoption was granted in August 2011, and a month later Mother removed the child from the Grandparents' home and refused to allow them any further contact with their granddaughter. Subsequently, the Grandparents filed a motion to reopen B.C.H.'s adoption and to intervene. In their motion, the Grandparents argued that under Indiana's adoption statutes they had "lawful custody" of their granddaughter when the court granted Stepfather's adoption petition, thus entitling them to legal notice of and the opportunity to consent to her adoption.

Indiana Code § 31-19-2.5-3 (effective 2012) requires that legal notice of an adoption petition be given to a "person whose consent to adoption is required under I.C. 31-19-9-1." Under Ind. Code § 31-19-9-1(a) (effective 2012), "a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by . . . (3) [e]ach person, agency, or local office having *lawful custody* of the child whose adoption is being sought." (Emphasis added.) Neither the adoption statutes nor case law defines "lawful custody" in this context. Therefore, we must interpret the term "lawful custody" and resolve whether B.C.H.'s maternal grandparents had lawful custody of her at the time the adoption petition was filed, thus requiring them to be given legal notice of the adoption petition and an opportunity to withhold consent to her adoption.

**Facts and Procedural History**

On November 29, 2007, B.C.H. was born to seventeen-year-old R.H. (now R.J.) in Johnson County, Indiana. Mother was not married to her daughter's biological father. At the time of B.C.H.'s birth, Mother attended high school, worked at Ruby Tuesday's, and lived independently. Approximately five days after her birth, B.C.H. began staying with her maternal grandparents, T.H. and C.H. For about a month, Mother saw B.C.H. daily. However, Mother soon stopped visiting her daughter on a regular basis. From this time on, the Grandparents served nearly exclusively as the little girl's caregivers. She remained in their primary care, custody, and control until September 4, 2011.

By early 2008, Mother was only visiting her daughter approximately once per week, despite living nearby. Her visits typically lasted between two and four hours, some of which she spent asleep. She had little to no contact with her daughter in between visits.

In February 2008, Mother initiated paternity proceedings in the Johnson County Juvenile Court. On May 23, 2008, the Juvenile Court issued an order establishing paternity[1] and granting Mother legal and physical custody of B.C.H. Nevertheless, she continued to visit B.C.H. only about once per week. Fortunately for the child, the Grandparents continued to be her day-in, day-out primary caregivers. Additionally, the Grandparents provided financial support for B.C.H.—with no help from Mother.

By February 2010, Mother had begun keeping then-two-year-old B.C.H. at her apartment one day and night per week. But despite living near her parents and daughter, Mother still had little to no contact with B.C.H. during the other days of the week.

Sometime during 2010, Mother married Stepfather. On November 29, 2010, Stepfather, with Mother's consent, filed a petition to adopt B.C.H. in the Johnson County Superior Court. The Grandparents were not served with formal notice of Stepfather's petition to adopt their granddaughter, who continued to reside with them. They were, however, aware of the pending adoption and voiced their adamant opposition to Mother. She assured them that Stepfather's adoption of B.C.H. would not impact their rearing of their granddaughter.

Mother's pattern of weekly visits continued past the adoption filing date until January 3, 2011, when Mother gave birth to a daughter with Stepfather. After her second child's birth,

---

[1] B.C.H.'s biological father consented to her adoption and is not involved in the case before us.

Mother did not see B.C.H. for about a month. Later in 2011, Mother began keeping B.C.H. for two days and nights per week. Until this time, Mother had never cared for her daughter more than two nights per week.

On August 15, 2011, Stepfather's adoption of B.C.H. was finalized.[2] Then on September 4, 2011, Mother removed B.C.H. from the Grandparents' care. She has since allowed her parents "almost no contact" with B.C.H. (App. at 34.) In all, the Grandparents were their granddaughter's primary caregivers for a total of 1,143 days.

Ten days after Mother removed B.C.H. from their care, the Grandparents filed a motion seeking custody in the Johnson County Juvenile Court and claiming to be de facto custodians of the girl,[3] who they claimed was suffering "severe emotional duress" from the separation. (App. at 14.) On February 6, 2012, the Juvenile Court agreed that they were her de facto custodians, a status entitling them to seek custody of her and to visit her in accordance with the Indiana Parenting Time Guidelines.[4]

Armed with the Juvenile Court's decree, the Grandparents filed a motion in the Johnson County Superior Court to reopen B.C.H.'s adoption and to intervene. In their motion, the Grandparents argued that under Indiana's adoption statute they had "lawful custody" of their

---

[2] The child now shares Stepfather's last name.

[3] Ind. Code § 31-9-2-35.5 (2008) provides, in relevant part, that "'[d]e facto custodian' . . . means a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least: (1) six (6) months if the child is less than three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age."

[4] Custody proceedings were still ongoing when the Court of Appeals published its opinion in this case. In the Matter of B.C.H., a Minor, 7 N.E.3d 1000, 1002 (Ind. Ct. App. 2014).

granddaughter when the court granted Stepfather's adoption petition, so they were entitled to legal notice of and the opportunity to consent to her adoption. Additionally, the Grandparents requested that the court allow them access to the transcript of the adoption proceedings in order for them to determine whether to file an Indiana Trial Rule 60(B) motion.

Granting limited relief, the court permitted the Grandparents to file a Rule (60)B motion in order to determine: (1) whether a de facto custodian, not acting pursuant to a court order, is a "lawful custodian" under Ind. Code § 31-19-9-1(a)(3); and (2) if so, whether the Grandparents' consent to B.C.H.'s adoption was required under Ind. Code § 31-19-9-1(a)(3). Subsequently, the Grandparents filed both a Trial Rule 60(B) motion for relief from judgment and Trial Rule 59 motion to correct error.[5] Contending that they were acting as B.C.H.'s de facto custodians at the time Stepfather filed his petition for adoption, the Grandparents maintained that they were entitled to notice and consent as "lawful custodians" of B.C.H. Mother and Stepfather countered that lawful custody "requires a court order vesting right of custody with the de facto custodian prior to the requirement" of notice and consent to an adoption; accordingly, in the absence of such an order, the Grandparents were not lawful custodians of B.C.H. (App. at 10.)

After a hearing, the Superior Court issued an order denying the Grandparents' motion for relief from judgment. Interpreting "lawful custody" within Ind. Code § 31-19-9-1(a)(3) to mean that "custody rights have been establish by court order and the common law right of custody of the parent terminated," the court determined that the grandparents did not have custody of B.C.H. at the time Stepfather filed the adoption petition. (App. at 11.) As such, they were not entitled to notice of their granddaughter's pending adoption, and their consent to her adoption

---

[5] Each sought to set aside the Superior Court's adoption decree.

was not required by law. Additionally, the court denied the Grandparents' motion to correct error due to their lack of standing and untimeliness.

The Grandparents appealed, and the Court of Appeals affirmed the Superior Court. In the Matter of the Adoption of B.C.H., a Minor, 7 N.E.3d 1000, 1008 (Ind. Ct. App. 2014) (Mathias, J., concurring in result). We granted transfer, thereby vacating the opinion below. See Ind. Appellate Rule 58(A); In the Matter of the Adoption of B.C.H., a Minor, 14 N.E.3d 44 (table) (Ind. 2014).

## Discussion

Our task is two-fold. First, we must interpret the meaning of the term "lawful custody" under Ind. Code § 31-19-9-1(a)(3). We review matters of statutory interpretation de novo because they present pure questions of law. Gardiner v. State, 928 N.E.2d 194, 196 (Ind. 2010) (citation omitted). Once we determine what constitutes "lawful custody," we will analyze whether the Grandparents had lawful custody of their granddaughter at the time the adoption petition was filed, thus entitling them to both legal notice of the adoption petition and an opportunity to withhold consent to her adoption.

## I.     "Lawful Custody"

To the Grandparents, the term "lawful custody" in Ind. Code § 31-19-9-1(a)(3) encompasses "those who meet the statutory definition of a de facto custodian at the time a [p]etition for [a]doption is brought ([i.e.,] *had* provided primary care for the child for a number of months or years), as they are lawful custodians of a child by law and fact." (Appellant's Br. at 22.) Mother and Stepfather, however, contend that "the trial court correctly reasoned that 'lawful custody' means child custody rights derived from a valid court order issued from a court

6

that has jurisdiction over the parties and the subject matter of the action." (Appellee's Br. at 7–8.)

Acknowledging that it faced a question of statutory interpretation, the Court of Appeals majority deemed the modifier "lawful" to be "ambiguous and susceptible to multiple interpretations."[6] In re Adoption of B.C.H., 7 N.E.3d at 1004. As a result of the perceived ambiguity, the court, in an effort to ascertain and effectuate the legislature's intent, analyzed the term by looking first to the ordinary meaning of the words, and then to the statute as a whole. It concluded that "[n]othing in the adoption statute supports an interpretation that would grant a custodian having lawful physical, but not legal, custody of a child the same legal rights as a custodian having court-ordered custody." Id. at 1005. Drawing on this conclusion, the court held that the statutory term "lawful custody" is "equivalent" to "'legal custody,' that is, court-ordered custody." Id.

Though he concurred with his colleagues in result, Judge Mathias disagreed with the majority's interpretation of "lawful custody." Examining the plain meaning of "lawful" via dictionary definitions, Judge Mathias interpreted the term broadly: "being in harmony with the law" or "[a]ccording or not contrary to law, permitted by law." Id. at 1008 (citing Merriam-Webster and the Oxford English Dictionaries, respectively).

Upon our review of the plain and ordinary meaning of "lawful custody," we agree with Judge Mathias. Put simply, "lawful" means "not contrary to law." See BLACK'S LAW DICTIONARY (9th ed. 2009) ("[n]ot contrary to law"; "permitted by law"). Moreover, just

---

[6] To illustrate, the court compared Black's Law Dictionary's definition of "lawful" as "[n]ot contrary to law" with the trial court's interpretation of "lawful" as "court ordered." In re Adoption of B.C.H., 7 N.E.3d at 1004.

because the trial court interpreted the term differently than Black's Law Dictionary does not make its meaning ambiguous. "Lawful" custody means just that—custody that is not unlawful.

We think the General Assembly used the term "lawful" to exclude from consideration a person who illegally absconds with a child. Once we understand what falls out of the definition of "lawful," it is apparent that there are many sources of potential lawful custody that span the spectrum from court-ordered custody of a child to de facto custodianship to informal caretaking arrangements, to name a few.

Our interpretation of "lawful custody" within Ind. Code § 31-19-9-1(a)(3) therefore encompasses more circumstances and familial arrangements than court-ordered legal custody.[7] As well it should, for the legislature likely chose to use the term "lawful custody" because it is more expansive than "legal custody." According to our research, Ind. Code § 31-19-9-1(a)(3) is the only place in our family law statutes where the General Assembly uses the term "lawful custody" rather than "legal custody." In addition, Ind. Code § 31-19-9-8(a)(10) (2014) provides that consent to an adoption is not required from "[a] legal guardian *or* lawful custodian of the person to be adopted who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child." (Emphasis added.) We presume the legislature deliberately used a different term because it intended to communicate a different meaning. See Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005) ("[W]e assume that the language in a statute was used intentionally and that every word should be given effect and meaning.").

---

[7] See Kitchell v. Franklin, 997 N.E.2d 1020, 1026 (Ind. 2013) ("Courts may not engraft new words onto a statute or add restrictions where none exist.") (Internal quotation omitted).

The General Assembly's deliberate choice to require those with lawful custody of a child to be given notice of and an opportunity to withhold consent to the child's adoption likely reflects its policy judgment that, in determining whether the adoption is in the child's best interests, trial courts *should* hear from the party with care, custody, and control of the child in question—regardless of whether the party's responsibility derives from a court order. Moreover, those with lawful custody of the child are exactly who trial judges *want* to hear from as they make one of the toughest decisions they are called upon to decide. And who better to know and speak to the child's best interests than the person(s) functioning as the child's parent(s). As the statute contemplates, a caregiver serving as a child's lawful custodian needs, and deserves, to have a voice in the child's adoption proceedings.

Additionally, the General Assembly's conscious choice to include the term "lawful" over "legal," and thus broaden who must be given notice of and an opportunity to consent to a child's adoption, is likely responsive to the changing needs of our society and its increasingly diverse familial arrangements. As an example, the Grandparents cite the 2009 U.S. Census findings that 7.8 million children live with at least one grandparent, a sixty-four percent increase from 1991. (Appellant's Br. at 21–22.) In a society where children are cared for and parented by adults without court-ordered custody rights, trial judges conducting adoption proceedings must hear from every party with a significant and substantial connection to the child(ren) in order to gain as much relevant information as possible about the child(ren)'s best interests.

As implied above, these cases are necessarily fact sensitive and must be decided on a case-by-case basis. For each particular case, courts must look to the circumstances at hand to determine if a party is in fact a lawful custodian of a child under Ind. Code § 31-19-9-1(a)(3). We now examine whether the Grandparents, B.C.H.'s primary caregivers for the first three years and nine months of her life, were her lawful custodians on the date Stepfather filed his petition for her adoption.

**II. As her Lawful Custodians, B.C.H.'s Maternal Grandparents were Entitled to Notice of and Opportunity to Consent to Adoption Proceedings**

The Grandparents claim to be B.C.H.'s lawful custodians "by virtue of the de facto custodian definition, and by Mother's placement and acquiescence to the child living with [them]." (Appellant's Br. at 7.) Mother and Stepfather respond that, in the absence of court-ordered custody rights, the Grandparents were merely maternal grandparents informally caring for their grandchild, and as such the law did not consider them to be lawful custodians entitled to notice of and consent to B.C.H.'s pending adoption.

We begin our analysis by recognizing that the Grandparents' later-adjudicated de facto custodian status does not establish their lawful custody of their granddaughter at the time the adoption petition was filed. As Mother and Stepfather note, their status was granted in an action initiated *subsequent* to the adoption proceedings. Though the Juvenile Court undoubtedly considered the Grandparents' primary caregiving of B.C.H. at the time the adoption petition was filed *in order to* evaluate their de facto custodianship claim, the court's ruling was not in effect at the time of filing. Therefore, we will not consider the Grandparents' formal status as their granddaughter's de facto custodians.

Rather, we look to the circumstances surrounding their caregiving of B.C.H. to determine if the Grandparents were her lawful custodians under Ind. Code § 31-19-9-1(a)(3) when Stepfather filed the adoption petition. As stated above, T.H. and C.H. were B.C.H.'s primary caregivers for the first forty-five months of her young life, until Mother took her from their home. Day in and day out, they were the ones who housed her, financially supported her, and met her needs. More importantly, they were the only adults in her life who, on a daily basis, cared for her, nurtured her, and formed strong bonds of attachment with her. And they continued to do so even after Stepfather filed a petition to adopt her and even after the adoption petition—which they had no voice in—*had been granted.* Mother may have had legal custody of B.C.H.

10

at the relevant time, but she ceded physical custody of her newborn daughter to her parents. In time, as the caretaking arrangement became permanent, the Grandparents' physical custody of B.C.H. became lawful custody.[8]

Based on these circumstances, we believe that the Grandparents were *exactly* the type of caregivers the General Assembly had in mind when they chose the term "lawful custody" over "legal custody" in Ind. Code § 31-19-9-1(a)(3). They were *exactly* who the legislature thought would be in the best position to tell a judge presiding over an adoption proceeding about the child in question and about the child's best interests. Though only the trial court has the authority to ultimately decide whether the adoption is in the child's best interests, lawful custodians like B.C.H.'s Grandparents have the right to present testimony to aid in the court's often difficult decision.

But in this case, the Grandparents were given neither formal legal notice of the pending adoption nor an opportunity to voice their concerns and be heard. They will have that opportunity now. We vacate the Superior Court's grant of the adoption petition and remand this case to the Superior Court for a hearing on B.C.H.'s best interests in the adoption. As her lawful custodians, the Grandparents *must* be given the opportunity to give or withhold their consent to Stepfather's adoption of their granddaughter.

However, the Grandparents' opportunity to withhold consent to B.C.H.'s adoption is not the same as an opportunity to veto her adoption for any reason they see fit. Should the Grandparents withhold their consent at the hearing for reasons the Superior Court finds *not* to be

---

[8] Although we emphasize that we did not reach our conclusion by applying the six-month and one-year time frames of Ind. Code § 31-9-2-35.5, our de facto custodian statute, we think trial judges may find them to be helpful references.

in B.C.H.'s best interests, then Ind. Code § 31-19-9-8(a)(10) enables the court to grant the adoption if it finds that doing so *is* in the girl's best interests.[9] Thus, Ind. Code § 31-19-9-1(a)(3) grants lawful custodians like the Grandparents the right to present testimony at an adoption hearing to aid the trial court's decision, and to withhold consent to an adoption, but does not entitle them to override the trial court's ultimate determination of the child(ren)'s best interests in the adoption should their failure to consent be for reasons found not to be in the best interests of the child(ren).

## Conclusion

We vacate the decision of the Superior Court granting Stepfather's petition to adopt B.C.H. and remand this case to the Superior Court for a hearing on B.C.H.'s best interests in the adoption and other proceedings consistent with this opinion. At this hearing, the Grandparents shall be given the opportunity to give or withhold consent to B.C.H.'s adoption.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.

---

[9] Ind. Code § 31-19-9-8(a)(10) provides, in relevant part, that "[c]onsent to adoption . . . is not required from . . . [a] legal guardian or lawful custodian of the person to be adopted who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child."