## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2019, 10:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Lisa M. Dillman
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of T.T. and K.T

J.T., Jr. (Father),

*Appellant-Respondent,*

v.

R.K.A. (Adoptive Parent),

*Appellee-Petitioner.*

June 19, 2019

Court of Appeals Case No. 18A-AD-2384

Appeal from the Fayette Circuit Court

The Honorable Hubert Branstetter, Jr., Judge

Trial Court Cause Nos. 21C01-1802-AD-81 & 21C01-1802-AD-86

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, J.T., Jr. (Father), appeals the trial court's adoption decree, granting the adoption of the minor children, T.T. and K.T. (collectively, Children), by R.K.A. (Adoptive Father).

We affirm.

# ISSUES

Father presents us with two issues on appeal, which we restate as:

    (1) Whether the trial court abused its discretion in denying Father's motion to continue the adoption hearing; and

    (2) Whether sufficient evidence existed to support the trial court's finding that Father's consent to the adoption was not required and the adoption was in the best interests of the Children.

# FACTS AND PROCEDURAL HISTORY

Father is the biological father of T.T., born on July 29, 2007, and K.T., born on November 29, 2010. K.A. (Mother), and Father divorced in 2011. Pursuant to the divorce decree, Father was ordered to pay weekly child support in the amount of seventy-seven dollars ($77). Father was granted parenting time with the Children, which he exercised fairly regularly at first after the divorce. Gradually and within three years prior to filing the adoption proceedings, Father started to taper off on his parenting time. He would not exercise his two

full weeks during summer, and at times, Father would go about three months between visits with the Children.

[5] Both Father and Mother remarried. Mother married Adoptive Father on December 10, 2014. Adoptive Father is raising the Children "as [his] own children" and the Children refer to him as "dad." (Transcript pp. 9, 22). In the year and a half preceding the filing of the adoption petition, Father ceased exercising consistent or scheduled parenting time. In 2017, Father contacted Mother only three times to initiate parenting time. In April 2017, Father contacted Mother on a Wednesday, requesting to see the Children on Friday. Mother "told him to get ahold of [her] on Friday," but he never did. (Tr. p. 18). Father contacted Mother again in September and then again one time after September, but none of these contacts resulted in actual parenting time. Father met the Children by chance when the Children were visiting with the paternal grandparents and Father stopped in. At no time did Father call to speak with the Children, nor did he send them birthday presents, other gifts, or cards.

[6] On February 26, 2018, Adoptive Father, with the consent of Mother, filed his separate petitions to adopt the Children. After the filing, Father contacted Mother twice, asking to see the Children. Adoptive Father's counsel sent notice of the adoption via certified mail to Father at his last known address. The certified mail was signed for at the address and a return of service was received. On April 3, 2018, Father filed his appearance in the proceedings, as well as a verified motion to continue the adoption hearing that was set for April 11, 2018, and to appoint an attorney to represent him in the proceedings. In his

verified motion, Father represented that the last known address that was used by Adoptive Father for legal mailings was his actual address. The trial court granted Father's request for a continuance and set the adoption hearing for May 29, 2018. Notice of the hearing was served to Father at his address. On April 27, 2018, the trial court conducted a hearing on Father's request for representation. At the close of the hearing, the trial court granted Father's request and appointed counsel for him. The trial court entered the appointment of Father's attorney on its docket and served counsel with notice of his appointment. On May 7, 2018, Father's counsel served a motion for discovery to Adoptive Father's counsel. Counsel responded to the motion by disclosing the witness list. Father met with his counsel approximately one week prior to the hearing and after counsel received the witness list.

[7] On May 29, 2018, Father and his counsel failed to appear for the hearing. Eventually, Father's counsel was located in the county courthouse and was summoned to the trial court to attend the hearing. Father's counsel informed the trial court that he had consulted with Father the previous week and Father had not mentioned the hearing date. Father's counsel requested a continuance on the ground that Father had not received notice of the hearing, which was objected to by Adoptive Father and denied by the trial. At the close of the evidence, the trial court concluded that

> [Father] of the [Children] [] has failed without justifiable cause to communicate significantly with the [C]hildren when he has been able to do so for at least one (1) year. Therefore, pursuant to

[I.C. §] 31-19-9-8(a)(2), the consent of [Father] to these adoptions is not required.

(Appellant's App. Vol. II, pp. 8, 18).  Finding the adoption to be in the best interests of the Children, the trial court granted Adoptive Father's petition.

Father now appeals.  Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

### I. *Notice*

Father contends that the trial court violated his due process rights by denying his counsel's motion for continuance made on his behalf at the commencement of the adoption hearing because Father had failed to receive notice of the hearing date.

The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV.  We have repeatedly noted that the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause.  *In re T.W.*, 831 N.E.2d 1242, 1245 (Ind. Ct. App. 2005).  "Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.'"  *Id.* (citing *E.P. v. Marion Co. Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995)).  We have held that the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Id.*

[11] Both Indiana's adoption statute and our trial rules set forth certain standards for notice and service of process that are applicable in adoption cases. *In re Adoption of L.D.*, 938 N.E.2d 666, 669 (Ind. 2010). Prior to terminating a parent's rights in adoption proceedings under Indiana Code section 31-19-9-8, the parent must be afforded notice of the adoption proceeding pursuant to Indiana Trial Rule 4.1. *See* I.C. § 31-19-4.5-2. Indiana Trial Rule 4.1 provides that service may be effected by

> Sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter.

[12] Adoptive Father sent the notice of the adoption petition via certified mail to Father's last known address, the mailing was signed for and a return of service was received. In response to the notice, Father entered his appearance in the proceedings and filed a verified motion to continue the adoption hearing. In his motion to continue, Father represented to the trial court that his actual address coincided with the last known address. Accordingly, it is undeniable that Father received notice of the adoption proceedings.

[13] Father now contends that he failed to receive notice of the re-scheduled hearing on May 29, 2018. While Trial Rule 4.1 governs service of process of the initial action, Trial Rule 5 "governs service of subsequent papers and pleadings in the action." *In re C.C.*, 788 N.E.2d 847, 851 (Ind. Ct. App. 2003), *trans. denied*. Indiana Trial Rule 5 authorizes service by U.S. mail and "[s]ervice upon the

attorney or party shall be made by delivering or mailing a copy of the papers to him at his last known address." We have previously held that "to require service of subsequent papers, such as hearing notices, to rise to the level of service of process would permit a parent or other party entitled to notice to frustrate the process by failing to provide a correct address and would add unnecessarily to the expense and delay in termination proceedings when existing provisions adequately safeguard a parent's due process rights." *In re A.C.*, 770 N.E.2d 947, 950 (Ind. Ct. App. 2002). Although *In re A.C.* was decided in the context of a termination of parental rights proceeding, we find that the same reasoning is applicable in adoption cases as similar safeguards are implicated and identical rights are protected.

[14] While certified mail was not necessary to effectuate service of the May 29, 2018 trial setting, the hearing notice was mailed to Father at the address referenced in his motion via certified mail and was deemed complete upon mailing. On April 14, 2018, the certified mailing was signed for at Father's address and a return of service was received by the trial court. Moreover, Father's counsel had received the witness list from Adoptive Father's counsel, had consulted with Father prior to the hearing, and was present at the May 29, 2018 hearing where he confronted and effectively cross-examined witnesses. Accordingly, based on the facts before us, we conclude that Father received adequate notice of the re-scheduled hearing and his due process rights were not implicated.

## II. *Sufficiency of the Evidence*[1]

[15] With respect to the merits of the case, Father contends that the adoption should be set aside as the trial court erroneously determined that Father's consent to the adoption was not required and the adoption was in the Children's best interests.

[16] When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014). We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial court is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Therefore, we will not disturb the ruling of the trial court unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of*

---

[1] As an initial issue, Adoptive Father contends that Father's consent to the adoption must be irrevocably implied because Father failed to file a written motion to contest the adoption. Indiana Code section 31-19-9-18 provides, in pertinent part, that "[t]he consent of a person who is served with notice . . . to adoption is irrevocably implied without further court action if the person . . . fails to file a motion to contest the adoption . . .not later than thirty (30) days after service of notice[.]" While we agree with Adoptive Father that Father did not file a *separate* motion to contest the adoption, the record reflects that in his verified motion for continuance, which was filed within thirty days of service of notice, Father stated, "I am in need of a court appointed attorney so I do not lose my rights to my children." (Appellant's App. Vol. II, p. 50). Due to the important rights involved and because "we have often held that where the purpose of a rule is satisfied, this [c]ourt will not elevate form over substance," we find that Father's handwritten inclusion on his verified motion for continuance satisfied I.C. § 31-19-9-18 and we conclude that Father properly and timely contested the adoption petition. *See Matter of Adoption of J.R.O.,* 87 N.E.3d 37, 43 (Ind. Ct. App. 2017) (oral motion to contest adoption satisfies the purpose of I.C. § 31-19-9-18), *trans. denied*.

*J.L.J.*, 4 N.E.3d at 1194. In determining whether the trial court's decision is supported by sufficient evidence, we do not reweigh the evidence, and we consider all evidence and reasonable inferences derived therefrom most favorably to the trial court's ruling. *Id.* In cases where an adoption petition is filed without the required parental consent, the party seeking to adopt "bears the burden of proving the statutory criteria for dispensing with such consent . . . by clear, cogent, and indubitable evidence." *Id.*

[17] Under Indiana law, a parent's consent to the adoption of his child is not required if

> For a period of at least one (1) year the parent:
>
> (A) Fails without justifiable cause to communicate significantly with the child when able to do so; or
>
> (B) Knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

I.C. § 31-19-9-8(a)(2). Here, the trial court concluded that Father "has seen the [C]hildren once, by chance for a brief period of time since January 2017, and has made two (2) half-hearted attempts to see the [C]hildren since the filing of the [p]etitions for adoption." (Appellant's App. Vol. II, pp. 8, 18). Accordingly, as Father failed to communicate significantly with the Children without justifiable cause for at least one year, the trial court concluded that Father's consent was not required.

[18] A determination on the significance of the communication is not one that can be mathematically calculated to precision. *E.B.F. v. D.F.*, 93 N.E.3d 759, 763 (Ind. 2018). On the one hand, a single significant communication within one year can be sufficient to preserve a non-custodial parent's right to consent to adoption, while, on the other hand, "a few, fleeting, and sometimes unintended" contacts with the child will not be found significant. *Id*. Even multiple and relatively consistent contacts may not be found significant in context. *Id*.

[19] The record before us reflects Father's interactions with the Children to be minimal at best during the year prior to the filing of the adoption petition. Besides an accidental encounter at the home of paternal grandparents, Father has not interacted with the Children since 2017. While he made several attempts to set up parenting time with the Children, Father never followed through on those attempts. Father did not contact the Children on their birthdays or during the Holidays, nor did Father send them cards or presents. Accordingly, as Father's minimal efforts cannot amount to the level of significant communications mandated under the Statute, the trial court correctly determined that Father's consent was not required for the adoption of the Children.

[20] Nonetheless, "[e]ven if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests." *In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014). The evidence suggests that Father has not had any meaningful

contact with the Children and was delinquent in his child support payments. Adoptive Father and Mother provide a stable and nurturing environment. Adoptive Father is "raising the [C]hildren as if they were his own [C]hildren" and a strong bond exists between them. (Tr. p. 9). Therefore, we conclude that adoption is in the best interests of the Children.

[21] However, Father contends that the trial court's grant of Adoptive Father's petition is defective because he failed to present evidence that "Mother was the legal custodian of the [C]hildren." (Appellant's Br. p. 24). Indiana Code section 31-19-9-1(a)(3) requires consent from "[e]ach person, agency, or local office having lawful custody of the Child whose adoption is being sought." "Lawful custody," within the meaning of the statute, is interpreted as "custody that is not unlawful." *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014). The court explained that "there are many sources of potential lawful custody that span the spectrum from court-ordered custody of a child to *de facto* custodianship to informal caretaking arrangements, to name a few." *Id*. Here, the record established that Mother is the primary caregiver for the Children, as well as the custodial parent who receives court-ordered child support from Father. The Children have lived with Mother since the divorce and she submitted written consent for the adoption, in compliance with I.C. § 31-19-9-1. Accordingly, we find that Adoptive Father carried his burden of proof that Mother was the lawful custodian of the Children.

# CONCLUSION

[22] Based on the foregoing, we hold that the trial court did not abuse its discretion by denying Father's motion for continuance of the adoption hearing; and sufficient evidence existed to support the trial court's finding that Father's consent to the adoption was not required and the adoption was in the best interests of the Children.

[23] Affirmed.

[24] Bailey, J. and Pyle, J. concur