

**FILED**

Feb 06 2015, 6:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Robert E. Shive
Hollingsworth & Zivitz, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Jonathan R. Deenik
Cross Pennamped Woolsey & Glazier
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kirk R. Jocham,

*Appellant-Respondent,*

v.

Melba Sutliff,

*Appellee-Intervenor,*

February 6, 2015

Court of Appeals Cause No.
29A02-1406-DR-424

Appeal from the Hamilton Superior Court

Cause No. 29D03-0803-DR-359

The Honorable William J. Hughes, Judge

**Robb, Judge.**

## Case Summary and Issue

[1] Kirk Jocham ("Jocham") appeals the trial court's order granting grandparent visitation to Melba Sutliff ("Sutliff"). Jocham raises several issues for our review, of which we find the following dispositive: whether Sutliff had standing to petition for grandparent visitation. Concluding that Sutliff was not a

"grandparent" entitled to seek visitation rights at the time she filed her petition, we reverse.

# Facts and Procedural History

[2] Sutliff is Stephenie Jocham's ("Stephenie") mother. Jocham and Stephenie were married and had one child together, K.J., born in 2004. Jocham and Stephenie divorced in Hamilton County in 2008. Jocham married Emily Jocham ("Emily") on March 12, 2011. On June 2, 2011, Stephenie passed away. On September 20, 2012, pursuant to a decree entered by the Hancock Superior Court, Emily adopted K.J. and a new birth certificate was issued showing K.J. as the child of "Kirk Robert and Emily Rebecca Jocham." Exhibit B.

[3] On July 16, 2013, Sutliff filed a Petition to Intervene in the Hamilton County dissolution case for the purposes of filing a Petition for Grandparent Visitation. Over Jocham's objection, the Petition to Intervene was granted and the Petition for Grandparent Visitation was scheduled for hearing. The trial court took the matter under advisement following the hearing and allowed the parties to file written summaries of their arguments. The trial court thereafter issued an order denying the Petition for Grandparent Visitation, finding in pertinent part as follows:

> 7. I.C. 31-17-5 et seq controls the issues of visitation sought by a grandparent. I.C. 31-17-5-1 provides, in relevant part: (a) A child's grandparent may seek visitation rights if: (1) the child's parent is deceased; (2) the marriage of the child's parents has been dissolved in

Indiana. . . I.C. 31-17-5-9 provides, in relevant part: Visitation rights provided for in section 1 or 10 . . . of this chapter survive the adoption of the child by any of the following: (1) a stepparent.

8. The visitation rights of a grandparent provided for in these sections are those acquired by a grandparent by court order prior to the adoption of a child by a stepparent. An adoption by a stepparent extinguishes any right of a grandparent (parent of a deceased biological parent) to subsequently petition a court for an order establishing grandparent visitation.

9. . . . The court is without authority to order grandparent visitation for [Sutliff] even though it may well be in the best interests of [K.J.]

Appellant's Appendix at 64.

[4] Sutliff then filed a Motion to Correct Error, alleging the trial court erred in essentially finding she was without standing to pursue her Petition for Grandparent Visitation. Following a hearing, the trial court granted the motion,[1] finding that notwithstanding Emily's adoption of K.J.:

. . . [Stephenie] was, remains, and always will be K.J.'s biological mother. Accordingly, [Sutliff] is the "maternal grandparent" under I.C. 31-9-2-77. She may seek, pursuant to I.C. § 31-17-5-1, visitation rights with K.J. because the child's parent is deceased, and because [Sutliff] is the biological parent of the child's deceased biological parent. The right provided for in section 1 is the *right to seek*

---

[1] A senior judge originally heard Sutliff's petition and issued the order denying it because the regular sitting judge of the Hamilton Superior Court was on temporary medical leave. See Appellant's App. at 83. The regular judge heard the motion to correct error, issued the order granting the motion to correct error, and subsequently heard and decided the merits of Sutliff's petition for grandparent visitation. Id.

> grandparent visitation rights, and it is that right of [Sutliff's] that has survived the adoption of K.J.

*Id.* at 87 (emphasis in original) (citations omitted).

Following a hearing on the merits of Sutliff's petition for grandparent visitation, the court issued the order that is the subject of this appeal granting Sutliff's petition and ordering visitation per a schedule set out therein, to include one weekend a month, one week in the summer, and extra time around the holidays. Jocham now appeals the trial court's grant of Sutliff's motion to correct error and subsequent grant of her petition for grandparent visitation.

# Discussion and Decision

## I. Standard of Review

Grandparents historically had no common-law right to visitation with their grandchildren. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013). In 1982, the Indiana legislature passed the Grandparent Visitation Act ("GVA"), which is the exclusive basis for a grandparent to seek visitation. *Id.* Because the GVA was enacted in derogation of the common law, it must be strictly construed. *In re Guardianship of A.J.A.*, 991 N.E.2d 110, 113 (Ind. 2013). To seek visitation rights, a grandparent must have standing as prescribed by the GVA; otherwise, the petition must be dismissed as a matter of law. *Id.*

We generally review a ruling on a motion to correct error for an abuse of discretion. *Kornelik v. Mittal Steel USA, Inc.*, 952 N.E.2d 320, 324 (Ind. Ct. App.

2011), *trans. denied*. However, Sutliff's motion to correct error raised a question regarding the interpretation of the GVA. Interpretation of a statute is a question of law that we review de novo, giving no deference to the trial court's interpretation. *Andrews v. Mor/Ryde Int'l, Inc.*, 10 N.E.3d 502, 504 (Ind. 2014). In other words, we independently review the statute's meaning and apply it to the facts of the case we are reviewing. *Id.* Our goal in interpreting a statute is to determine and give effect to the legislature's intent, primarily by examining the statute's language. *State v. Coats*, 3 N.E.3d 528, 531 (Ind. 2014), *cert. denied*, 2015 WL 133244 (2015). "If a statute is clear and unambiguous, [we] do not apply any rules of construction other than giving effect to the plain and ordinary meaning of the language." *N.L. v. State*, 989 N.E.2d 773, 777 (Ind. 2013) (citation omitted).

## II. Sutliff's Standing under the GVA

[8] Sutliff asserted below, and the trial court ultimately agreed, that she has standing to pursue grandparent visitation pursuant to Indiana Code section 31-17-5-1(a)—which allows, inter alia, the grandparent of a child whose parent is deceased or whose parents' marriage has been dissolved to seek visitation rights—and Indiana Code section 31-17-5-9—which provides that grandparent visitation rights "survive the adoption of the child by . . . [a] stepparent." Jocham asserts that, notwithstanding section 31-17-5-9, Sutliff lacked standing to pursue grandparent visitation because she filed her petition to establish grandparent visitation rights after Emily adopted K.J.

[9] There is no question that Sutliff is the parent of Stephenie, who is the biological parent of K.J. Furthermore, there is no question that Jocham and Stephenie's marriage was dissolved in 2008 or that Stephenie is now deceased. Accordingly, had Sutliff filed a petition for grandparent visitation at any time after Jocham and Stephenie filed for divorce up to the day Emily's adoption of K.J. was final, we would agree with the trial court that she had the right to petition for visitation rights and that any visitation rights granted to her as a result of the petition survived the adoption.

[10] In *In re Visitation of Menzie*, 469 N.E.2d 1225 (Ind. Ct. App. 1984), *trans. denied*, the child's biological mother passed away in 1975 and her father subsequently remarried. After the GVA was enacted in 1982, the maternal grandmother sought and was granted visitation rights with the child. The child's stepmother then adopted the child in 1983 and the child's parents filed a petition to modify or terminate the grandparent visitation order which was denied. On appeal, we held that the adoption cut off the grandmother's existing visitation rights. *Id.* at 1227. In 1985, following the Menzie decision, the GVA was amended to add now-section 31-17-5-9 providing that visitation rights survive a stepparent adoption. When *Menzie* came before this court again following legislative amendments to the GVA, we noted that the legislature had recognized a difference between a traditional adoption resulting in a wholly new family unit and an adoption resulting in a new member joining an existing family unit and had "obviously chosen" to extend special protection to existing grandparent/grandchild ties when it provided for post-adoptive visitation.

*Bailey v. Menzie*, 542 N.E.2d 1015, 1017-18 (Ind. Ct. App. 1989). Subsequent cases have therefore held that stepparent adoption does not extinguish preexisting grandparent visitation rights. *See*, *e.g.*, *Sightes v. Barker*, 684 N.E.2d 224, 227 (Ind. Ct. App. 1997) (holding where there was no dispute that grandmother was a "grandparent" within the meaning of the GVA when she filed her petition, her visitation rights with child were not extinguished by child's subsequent adoption by stepfather), *trans. denied*; *cf. Baker v. Lee*, 901 N.E.2d 1107, 1110 (Ind. Ct. App. 2009) (holding that because paternal grandfather had obtained a court order for visitation through guardianship proceedings because of his status as child's grandparent, and because that order predated child's adoption by maternal grandparents, there was a sufficient existing right to visitation to allow filing of a petition under the GVA post-adoption).

[11] In this case, however, Sutliff had no existing grandparent visitation rights at the time of the adoption, nor was she pursuing any. As noted above, at common law, a grandparent had no right to visitation. *See In re M.L.B.*, 983 N.E.2d at 585. Therefore, the GVA does not protect an existing right, it *confers* a right upon a person who is statutorily entitled to ask for it. When Emily adopted K.J., she became his legal mother in Stephenie's stead. *See* Ind. Code § 31-19-15-2(c) (stating that after a stepparent adoption, the adoptive parent "occup[ies] the same position toward the child that the adoptive [parent] would occupy if the adoptive [parent] [was] the biological [parent] . . . ."); *see also In re Menzie*, 469 N.E.2d at 1227 (noting the stepparent adoption statute "places the adoptive

mother in the position of the child's natural mother. Thus the adoptive mother becomes the natural mother of the child. All legal ties between the adopted child and her biological mother are severed."). Following the adoption, Sutliff remained K.J.'s grandmother biologically, emotionally, and morally, but at the time she filed her petition for grandparent visitation, she was no longer legally his grandparent. A "grandparent" is defined for purposes of the grandparent visitation statute as "(1) the adoptive parent of the child's parent; (2) the parent of the child's adoptive parent; and (3) the parent of the child's parent." Ind. Code § 31-9-2-77. Sutliff has none of those relationships to *Emily*, who, as of September 20, 2012, is legally recognized as K.J.'s parent. Therefore, on July 16, 2013, Sutliff had no standing to bring her petition. *Cf. In re G.R.*, 863 N.E.2d 323, 326 (Ind. Ct. App. 2007) (holding that trial court properly denied grandmother's petition for grandparent visitation where mother's parental rights to child were terminated and grandmother's petition was filed later that same day; grandmother had no standing when she filed her petition because when mother's rights were terminated, she was no longer a "grandparent" as defined by the GVA).

[12] Our decision is not inconsistent with and does not render section 31-17-5-9 meaningless. Previous court precedent has defined the "[v]isitation rights" referenced in section 31-17-5-9 as visitation rights already exercised or established by court order under section 31-17-5-1 prior to the adoption. *See, e.g.*, *Sightes*, 684 N.E.2d at 227; *In re Marriage of J.D.S. and A.L.S.*, 953 N.E.2d 1187, 1190 (Ind. Ct. App. 2011) (although paternal grandmother at one time

had visitation rights, they were terminated by court order; thus, when biological father's parental rights were later terminated simultaneously with mother's new husband adopting the child, "there were no existing visitation rights upon which to bootstrap continued visitation in the wake of the adoption" and grandmother did not have standing to pursue a post-adoption petition to reinstate visitation), *trans. denied*. Our decision today is in line with those decisions. Moreover, in the recently decided case *In re Adoption of B.C.H.*, 22 N.E.3d 580 (Ind. 2014), our supreme court made it clear, in a different though similar context, that we must carefully parse the words the legislature uses in a statute in determining its intent. In *B.C.H.*, it was the words "lawful custody" in the statute describing persons who must consent to an adoption. *See id.* at 581 (referencing Ind. Code § 31-19-9-1(a)). Here, it is the words "visitation rights" in section 31-17-5-9 regarding what right survives stepparent adoption. The trial court believed what survives is "the *right to seek* grandparent visitation rights . . . ." Appellant's App. at 87 (emphasis in original). Our careful reading of section 31-17-5-1, however, makes it clear that the phrase "visitation rights" in the GVA does not mean the right to go to court to get visitation but rather, the right established to visit. The language of section 1 states a grandparent "may seek visitation rights" in certain circumstances. It does not say the grandparent "has a right to seek visitation." Therefore, reference to "visitation rights" is not a reference to the right to seek visitation but rather to the right of visitation already established. Correspondingly, section 31-17-5-9's reference to the "[v]isitation rights provided in section 1" as surviving stepparent adoption means not that the ability to go to court survives the adoption but that the right

to visit already given by a court survives. Because Sutliff had not sought visitation rights pursuant to section 31-17-5-1 prior to the adoption, no right to visitation had already been given by a court, and she had no visitation rights for section 31-17-5-9 to protect.

[13] We note the trial court's concern that Sutliff did not get notice of the adoption petition, the granting of which ultimately cut off her right to seek visitation. However, she was not entitled to any notice.[2] *See* Ind. Code ch. 31-19-2.5. Moreover, this is not a situation where Jocham strung Sutliff along by giving her time with K.J. to placate her and then suddenly and without warning cut her off after the adoption. In this case, although Sutliff alleged she was unaware of the filing of the petition for adoption, she was clearly aware that she should perhaps seek to protect her continued relationship with K.J., and moreover, she had ample time to do so. Sutliff could have sought grandparent visitation rights as early as 2008 when Jocham and Stephenie were divorced or after Stephenie's death in 2011. And her overnight visits with K.J. were curtailed in June of 2012, after which she saw K.J. only sporadically. K.J.'s adoption by Emily was final in late September of 2012. Sutliff did not file her petition until July of 2013.

---

[2] One way to avoid cutting off a grandparent's opportunity to seek visitation rights by catching him or her unawares would be to amend the adoption statute to require notice of a petition for adoption be given to anyone who would be eligible under the GVA to seek grandparent visitation rights as of the time the petition is filed.

[14]    In the original order denying Sutliff's petition for lack of standing, the trial court acknowledged that grandparent visitation "may well be in the best interests of [K.J.]," Appellant's App. at 64, and, upon granting Sutliff's motion to correct error and hearing the merits of her petition, the trial court specifically found in its order granting grandparent visitation that Jocham's conduct had been unreasonable and that "a visitation order in this case promotes K.J.'s best interests," *id.* at 105.[3]    We sympathize with Sutliff's plight, and we recognize that, especially in family law matters, more is undoubtedly involved than the legally relevant facts disclose.   But the legally relevant facts are those upon which we must base our decision, and here, those facts lead inescapably to the conclusion that Sutliff had no legal right to seek grandparent visitation at the time she filed her petition.   Regrettably, in situations such as this, the result may be inequitable and may not serve the purpose of the GVA, which is to "strengthen familial bonds and promote inter-generational contact" when the nuclear family no longer exists. *In re Visitation of J.D.G.*, 756 N.E.2d 509, 512 (Ind. Ct. App. 2001).   However, it is not our place to judicially expand the statute beyond its explicit terms or to craft exceptions for specific circumstances.

---

[3] Where issues involving a child arise, the primary concern is the best interests of that child.   But the trial court can only engage in a best interests inquiry when a case is properly before it.   The best interests of the child do not determine who has standing to raise the issue; they only determine whether a person with legal standing is entitled to the relief sought.   When ruling on a properly filed petition, the trial court can assess the reasonableness of each party's actions and level the playing field between an unreasonable denial of visitation by a parent and an unreasonable demand for visitation by a grandparent by carefully crafting a visitation order in terms of the time, frequency, and conditions of visitation that will best suit the child's interests. Here, though, the trial court should not have reached these questions, and because we hold the trial court erred in allowing Sutliff's petition to proceed, we do not reach them either.

The legislature drew a fine line on this issue between protecting inter-generational relationships and protecting newly-formed adoptive family units. Stepping into the role of an adoptive parent and building a successful new family unit takes courage and support. There must be some assurance that the circumstances as they exist at the time of the adoption will not be thrown into disarray months or even years later by a grandparent newly seeking visitation.

[15] The trial court erred in finding Sutliff had standing, in granting her motion to correct error, and in ordering grandparent visitation between Sutliff and K.J.

## Conclusion

[16] Because Sutliff filed her petition seeking grandparent visitation after K.J. had been adopted by Emily, she was no longer legally entitled to grandparent visitation rights. The trial court erred as a matter of law in granting Sutliff's motion to correct error, considering her petition on the merits, and ordering grandparent visitation. The judgment of the trial court is reversed.

[17] Reversed.

Bailey, J., and Brown, J., concur.