

**FILED**

Jan 23 2017, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

J. Michael Woods
Stracci Criminal Defense
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Indiana Bureau of Motor
Vehicles, and Kent Abernathy,
Commissioner of the Indiana
Bureau of Motor Vehicles,

*Appellants-Respondents,*

v.

Craig Watson,

*Appellee-Petitioner.*

January 23, 2017

Court of Appeals Case No.
45A03-1607-MI-1538

Appeal from the Lake Circuit
Court

The Honorable George Paras,
Judge

Trial Court Cause No.
45C01-1512-MI-325

**Robb, Judge.**

# Case Summary and Issue

[1]     In 2015, the Indiana Bureau of Motor Vehicles ("BMV") denied the renewal of Craig Watson's chauffeur's license. Following an unsuccessful administrative appeal, Watson petitioned for and the trial court granted him special driving privileges. BMV refused to issue Watson's special driving privileges, and Watson subsequently filed a motion to compel the issuance of a valid chauffeur's license, which the trial court granted. The Attorney General of Indiana then intervened on behalf of BMV and filed a motion to correct error alleging the trial court lacked personal jurisdiction to consider Watson's motion to compel. The trial court denied BMV's motion to correct error. BMV now appeals, raising one issue for our review, whether the trial court erred in denying its motion to correct error. Because Watson effectively petitioned the trial court for judicial review of an agency action without having served the Attorney General of Indiana, as required by the Indiana Administrative Orders and Procedures Act ("AOPA"), we conclude the trial court did not have personal jurisdiction and therefore could not enter an order directing BMV to issue Watson a chauffeur's license. We therefore reverse the trial court's denial of BMV's motion to correct error and vacate its order directing BMV to issue Watson a chauffeur's license.

# Facts and Procedural History

[2]     Watson has worked in the construction industry for almost twenty-five years and his employment requires him to operate certain types of trucks that require a chauffeur's license.

In 2000, the State of Illinois suspended Watson's driver's license for failure to make required payments towards fines and costs. Although Watson stated he received notice from the Illinois Secretary of State that he was eligible for reinstatement, he elected to move to Indiana without fully resolving the issue with Illinois.

[3]     In 2001, BMV issued Watson a driver's license. In 2005, BMV renewed Watson's license which had been amended to a chauffeur's license. Watson renewed his chauffeur's license in 2009. In July of 2015, Watson again attempted to renew his chauffeur's license; however, this time BMV refused to renew his license. BMV relied upon the Driver License Compact Act, to which the Indiana and Illinois are signatories, and informed Watson he must resolve his license suspension with Illinois before it would be able to renew his license. Watson administratively appealed the denial of his license renewal and, on December 21, 2015, BMV issued a final order finding Watson's license renewal was "properly denied . . . due to the Illinois suspension." Appellant's Appendix at 66.

[4]     On December 28, 2015, Watson filed a Verified Petition for Special Driving Privileges. Following a hearing at which a Lake County deputy prosecutor appeared on behalf of BMV, the trial court granted Watson's request for special

driving privileges.  However, on January 25, 2016, BMV sent a letter to the trial court stating it could not issue Watson special driving privileges because he still possessed a valid Indiana license and they could not issue specialized driving privileges on a suspended Illinois license.  One month later, Watson responded by filing a Motion to Compel Issuance of Specialized Driving Privileges or to Issue a Valid Driver's License Credential.  Watson's motion, in addition to requesting the trial court to compel BMV to issue special driving privileges, contested BMV's interpretation of the Driver License Compact Act and requested the trial court order BMV to issue him a valid chauffeur's license. The certificate of service indicates Watson served the motion on the Commissioner of the Bureau of Motor Vehicles and the Lake County Prosecuting Attorney's Office.

[5] Following a hearing on March 8, 2016,[1] the trial court granted Watson's Motion to Issue a Valid Driver's License Credential and ordered BMV to issue Watson a valid chauffeur's license.  The trial court's order states, "[Indiana Code section 9-28-1-3, Article 5, Section 2] applies to the issuance of a new driver's license, not the renewal of an existing license . . . .  [Watson's] suspension in Illinois does not serve as a bar to issuance of a renewal

---

[1] At the hearing, BMV was represented by a deputy prosecutor.  The deputy prosecutor's only participation in the hearing involved a colloquy that went as follows:

> [The State]:     Nothing from the State.
> The Court:       So . . ., you're representing the BMV?
> [The State]:     I believe so.

Transcript from March 8, 2016 Hearing at 7.

credential[.]" Appellant's App. at 13. The trial court also found BMV was equitably estopped from refusing to issue a renewal of his chauffeur's license.

[6] On April 7, 2016, the Attorney General of Indiana filed a motion to intervene on behalf of BMV and a motion to correct error alleging the trial court lacked personal jurisdiction to order BMV to issue a chauffeur's license. The motion to correct error contended Watson's Motion to Issue a Valid Driver's License Credential was, in effect, a petition for judicial review requiring service upon the Attorney General of Indiana. The trial court denied BMV's motion to correct error. BMV now appeals.

## Discussion and Decision

[7] BMV argues the trial court impermissibly engaged in judicial review of an agency decision. Specifically, it alleges "Watson's motion to compel the issuance of a chauffeur's license, and the trial court's subsequent order, essentially converted Watson's original action into a petition for judicial review [of an agency action]." Appellant's Brief at 11 (internal citations omitted). BMV further argues because the trial court reviewed, at Watson's request, an administrative action of a state agency, Watson was required to follow statutory procedures outlined in AOPA, including serving the Attorney General, which he failed to do; and because Watson failed to serve the Attorney General, BMV argues the trial court lacked personal jurisdiction to order it to issue a chauffeur's license.

# I. Standard of Review

We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. *Jocham v. Sutliff*, 26 N.E.3d 82, 85 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *In re Marriage of Dean*, 787 N.E.2d 445, 447 (Ind. Ct. App. 2003), *trans. denied*. However, where the issues raised in the motion are questions of law, the standard of review is de novo. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. Here, BMV's motion to correct error raised questions regarding the trial court's jurisdiction and authority to order BMV to grant Watson a chauffeur's license. In response, Watson alleged that new statutory amendments removing certain BMV actions from judicial review under AOPA apply retroactively. As a trial court's jurisdiction and the interpretation of a statute present questions of law, our standard of review is de novo. *See Boyer v. Smith*, 42 N.E.3d 505, 508 (Ind. 2015); *Johnson v. State*, 36 N.E.3d 1130, 1133 (Ind. Ct. App. 2015), *trans. denied*.

# II. Judicial Review

In refusing to renew Watson's chauffeur's license, BMV relied upon the Driver License Compact Act which permits BMV to deny an applicant a license to drive if the applicant has held or is the holder of a license from another party state and the applicant's license from that state either (1) "has been suspended by reason, in whole or in part, of a violation and if such suspension period has

not terminated[,]" or (2) "has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated[.]" Ind. Code section 9-28-1-3, art. 5(1), (2). Following an unsuccessful administrative appeal, Watson petitioned for special driving privileges under Indiana Code section 9-30-16-4, which permits the trial court to grant special driving privileges to an individual whose license has been administratively suspended by BMV. The trial court granted Watson's petition; however, BMV refused to issue the privileges because of its stated inability to grant special driving privileges on a valid Indiana license or a suspended Illinois license.

[10] Watson subsequently filed a Motion to Compel Issuance of Specialized Driving Privileges or to Issue a Valid Driver's License Credential. In his motion, Watson argued Article 5, Section 2 of Indiana Code section 9-28-1-3 applies "only to the application for a new license where the applicant holds or held a license from another party state, and does not apply to the renewal of a currently held Indiana license, and the BMV . . . must issue the appropriate credential to [Watson] for a valid chauffeur's license." Appellant's App. at 28-29. The motion also alleged BMV is equitably estopped from refusing to issue a chauffeur's license as Watson acted in reliance upon BMV's license renewals for fourteen years. The trial court held a hearing on the motion, granted Watson's Motion to Issue a Valid Driver's License Credential, and ordered BMV to issue a chauffeur's license to Watson.

[11] We agree with BMV that Watson requested and the trial court engaged in judicial review of an agency decision. Although labeled otherwise, Watson's

Motion to Compel Issuance of Specialized Driving Privileges or to Issue a Valid Driver's License Credential, at least in relevant part, challenged BMV's denial of his license renewal, contested BMV's interpretation of the Driver License Compact Act, and requested the trial court overrule BMV's decision and order it to issue him a chauffeur's license. The trial court agreed with Watson and, in its order, concluded BMV misinterpreted the relevant statutory provisions on which it based its license denial. Because Watson's motion to compel effectively petitioned the trial court for judicial review of BMV's decision, Watson was required to comply with AOPA. *See* Ind. Code § 4-21.5-5-1 (establishing AOPA as the exclusive means for judicial review of an agency action).

## III. Retroactive Application of Statutory Amendments

[12]     As noted above, AOPA provides the "exclusive means for judicial review of an agency action." Ind. Code § 4-21.5-5-1. However, AOPA does provide for certain exceptions and exemptions, and, effective May 2015, the Indiana General Assembly created a separate statutory provision for administrative review of certain actions taken by BMV. *See* Ind. Code § 9-33 *et seq*. If a party desires to contest a BMV action enumerated in Indiana Code section 9-33-1-1, it must now follow the procedures outlined in Indiana Code section 9-33-2-3, rather than AOPA. The 2015 law did not exclude BMV actions taken pursuant to Indiana Code article 9-28 (including the Driver License Compact Act) from judicial review under AOPA. However, effective July 1, 2016, the General Assembly amended Indiana Code sections 4-21.5-2-5 and 9-33-1-1 to exclude

actions taken by BMV under Indiana Code article 9-28 from judicial review under AOPA. Ind. Code § 4-21.5-2-5(18), *added b*y P.L. 198-2016, Sec. 6 (2016); *see also* Ind. Code § 9-33-1-1(7), *added by* P.L. 198-2016, Sec. 630 (2016). To combat BMV's argument that the statutory procedures outlined in AOPA should have been followed, Watson alleges the 2016 statutory amendments excluding BMV actions taken pursuant to Indiana Code article 9-28 from AOPA should be applied retroactively.

[13]  The general rule in Indiana is that "[s]tatutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well." *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005). An exception to this general rule exists for remedial or procedural statutes. *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002). Although statutes and rules that are procedural or remedial may be applied retroactively, they are not required to be. *Pelley*, 828 N.E.2d at 919. Even for procedural or remedial statutes, "retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons." *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*.

[14]  We find no strong or compelling reasons to apply the amendments retroactively, nor does Watson offer any. The General Assembly did not specify the amended statute would apply retroactively and nothing in the plain language of the statute indicates an unequivocal and unambiguous retrospective intent. Further, we fail to see how retroactive application of the statute would benefit Watson. If the statutes applied retroactively and AOPA did not apply,

then the administrative review procedures enacted in Indiana Code article 9-33 would apply, with which Watson did not comply (nor could he). The General Assembly simply removed Indiana Code article 9-28 from judicial review under AOPA and, effective July 1, 2016 (three weeks after the trial court denied BMV's motion to correct error), placed it in a separate administrative review of certain BMV actions. Consistent with the intent of the General Assembly, one of the two procedures must apply for judicial review of BMV actions taken pursuant to Indiana Code article 9-28, and both require service upon the Attorney General. *See* Ind. Code § 9-33-2-4(a); Ind. Code § 4-21.5-5-8(a). However, because we find no strong or compelling reasons, we decline to apply the statute retroactively.

# IV. Personal Jurisdiction

[15] Generally speaking, ineffective service of process prohibits a trial court from having personal jurisdiction over a defendant. *Thomison v. IK Indy, Inc.*, 858 N.E.2d 1052, 1055 (Ind. Ct. App. 2006). Indiana Code section 4-21.5-5-8 describes whom a petitioner seeking judicial review must serve and how service is to be achieved:

> (a) A petitioner for judicial review shall serve a copy of the petition upon:
>
>> (1) the ultimate authority issuing the order;
>>
>> (2) the ultimate authority for each other agency exercising administrative review of the order;
>>
>> (3) the attorney general; and

(4) each party to the proceeding before an agency;

in the manner provided by the rules of procedure governing civil actions in the courts. If the ultimate authority consists of more than one (1) individual, service on the ultimate authority must be made to the secretary or chairperson of the ultimate authority.

BMV argues because AOPA applies, Watson was required to serve the Attorney General; because he did not, the trial court lacked personal jurisdiction to order BMV to issue a chauffeur's license.[2] In support of its argument, BMV cites to *Guy v. Comm'r, Ind. Bureau of Motor Vehicles*, 937 N.E.2d 822 (Ind. Ct. App. 2010).

In *Guy*, Guy sought judicial review of BMV's decision to revoke his driver's license. Guy listed only "Commissioner, Indiana Bureau of Motor Vehicles" as the Respondent, and a summons was sent to the Commissioner in Indianapolis. *Id.* at 823. At a hearing on Guy's petition, no one appeared on behalf of the Commissioner. The trial court denied Guy's petition to order the Commissioner to renew his Indiana driver's license. This court affirmed, reasoning the language in Indiana Code section 4-21.5-5-8 expressly requires

---

[2] Watson contends BMV has waived this argument because a "party may not raise an issue for the first time in a motion to correct error or on appeal." *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). However, given our longstanding preference for deciding cases on their merits, *Brazier v. Maple Lane Apartments I, LLC*, 45 N.E.3d 442, 451 (Ind. Ct. App. 2015), *trans. denied*. and our conclusion Watson omitted to serve the Attorney General as required by law, we decline to find BMV waived this issue.

service upon the parties listed in the statute, and without it, the court is without personal jurisdiction to enter an order. *Id.* at 826.

[17] Watson attempts to distinguish *Guy* and directs us to *Evans v. State*, 908 N.E.2d 1254 (Ind. Ct. App. 2009). In *Evans*, the Indiana Family and Social Services Administration ("FSSA") determined that Evans was not eligible for certain Medicaid coverage. Evans filed a verified petition for judicial review of FSSA's determination. He sent a summons to the Governor at the Indiana Statehouse through certified mail. The summons named the State of Indiana and FSSA as respondents. Another summons was sent to the Attorney General through certified mail. This summons also referred to the State and FSSA as respondents. A deputy attorney general entered an appearance on behalf of the State and FSSA and requested an extension of time to respond to Evans' petition. Subsequently, the State and FSSA filed a motion to dismiss Evans' petition on the basis that the trial court did not obtain personal jurisdiction because Evans failed to serve FSSA. The trial court granted the motion to dismiss.

[18] On appeal, this court noted the general rule that ineffective service of process precludes a trial court from obtaining personal jurisdiction. *Id.* at 1258. However, we noted that where there is not a complete lack of service, the general rule is not always applicable. *Id.* We concluded that even though Evans incorrectly sent a summons to the Governor instead of FSSA, dismissal for lack of personal jurisdiction was not warranted. *Id.* In so concluding, we noted that Indiana Trial Rule 4.15(F) provides that "[n]o summons or the

service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." *Id.* Therefore, because a deputy attorney general entered an appearance on behalf of the State and FSSA, FSSA had actual notice and the summons was reasonably calculated to inform FSSA of the lawsuit. *Id.* at 1259.

[19] We think the facts of this case more closely resemble *Guy* than *Evans*. Watson disputes service was ineffective because a deputy prosecutor appeared on behalf of BMV. However, we note Watson's original action was a petition for special driving privileges. As such, a prosecuting attorney was statutorily required to appear on behalf of BMV with regard to the issuance of special driving privileges. *See* Ind. Code § 9-30-16-4(c) (stating a "prosecuting attorney shall appear on behalf of the bureau to respond to a petition filed under this section"). The prosecuting attorney is not charged with defending judicial review of agency action, and once Watson decided to petition the trial court for judicial review, the Attorney General was required to be served.[3] Moreover, given the deputy prosecutor's lack of significant participation in the March 8, 2016, hearing on Watson's Motion to Issue a Valid Driver's License Credential,

---

[3] To the extent Watson argues service was reasonably calculated to inform the Attorney General of the lawsuit because he fully complied with the service requirements of the special driving privileges statute by serving the Commissioner of the BMV and the prosecuting attorney, *see* Ind. Code § 9-30-16-4(b)(6), we note Indiana Trial Rule 4.6(A)(3) also requires service upon an agency's executive officer *and* the Attorney General when serving a state governmental organization.

we conclude, similar to *Guy*, BMV was unrepresented in Watson's petition for judicial review. Because Watson did not serve the Attorney General, his service of process was ineffective and the trial court lacked jurisdiction to order BMV to issue a chauffeur's license. *See Guy*, 937 N.E.2d at 826.[4]

# Conclusion

[20] Although labeled otherwise, we conclude Watson's Motion to Issue a Valid Driver's License Credential effectively asked the trial court to engage in judicial review of an agency action. As such, Watson was required to comply with AOPA and serve the Attorney General, which he failed to do. Absent valid service upon the Attorney General, the trial court lacked personal jurisdiction to order BMV to issue a chauffeur's license to Watson. Accordingly, we reverse the trial court's denial of BMV's motion to correct error and vacate its order directing BMV to issue Watson a chauffeur's license.

[21] Reversed and vacated.

Kirsch, J., and Barnes, J., concur.

---

[4] Because we conclude the trial court lacked jurisdiction to order BMV to issue Watson a license, we do not address Watson's argument BMV is equitably estopped from denying a license credential to Watson.