## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2020, 9:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murphy
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert E. Shive
Paul R. Sadler
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Department of Child Services,

*Appellant-Respondent,*

    v.

J.M.,

*Appellee-Petitioner.*

December 21, 2020

Court of Appeals Case No.
20A-MI-1117

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-1904-MI-15462

**Bradford, Chief Judge.**

# Case Summary

In October of 2017, the Department of Child Services ("DCS") received a report of potential child abuse after then-ten-year-old K.M. alleged that her neighbor, J.M., had molested her by touching her buttocks on several occasions. After conducting an investigation, DCS found the allegation to be substantiated. J.M. appealed and an Administrative Law Judge ("ALJ") subsequently affirmed DCS's determination, finding that the evidence was sufficient to substantiate the allegation. J.M. sought judicial review. Although the trial court initially affirmed the ALJ, the trial court later granted J.M.'s motion to correct error, finding that the evidence was insufficient to substantiate the allegation. Specifically, the trial court found that the evidence was insufficient to prove that J.M. acted with the requisite intent. DCS appeals from the trial court's order. Because we conclude that the evidence is sufficient to prove that J.M. acted with the requisite intent, we conclude that the trial court abused its discretion by granting J.M.'s motion to correct error. We therefore reverse the judgment of the trial court.

# Facts and Procedural History

K.M. reported that J.M. touched her buttocks on at least three different days, always while she was visiting her friend and J.M.'s son, G.M. These touches took place during September and October of 2017, when K.M. was ten years old. Although she only detailed the touching that occurred on the three days described below, K.M. indicated that she visited G.M. at J.M.'s home at least

once every weekend during September and October of 2017, and that J.M. patted her on the buttocks every time she visited. K.M. reported that the touchings only occurred at J.M.'s home.

[3] On the first day detailed by K.M., K.M. went into J.M.'s kitchen to help make popcorn before she and G.M. watched a movie. While J.M. and K.M. were the only two people in the kitchen, J.M. patted K.M. on the buttocks with his hand on top of K.M.'s clothing. K.M. described the touching as similar to what you would do if you were to "pat[] yourself on the back." DCS Ex. A, 41:35-41:50. The pat was not a single pat but rather a series of pats.

[4] On the second day detailed by K.M., J.M. again patted her on the buttocks. He also touched her on various other parts of her body, giving her unsolicited massages on her back, lower chest, feet, legs, and groin area. The first pat and massages occurred when K.M. and G.M. were seated at a bar area in the kitchen, playing a video game. K.M. reported that on this occasion, J.M. walked over to her and began using his hand to massage her on her back and on the front and back of her lower chest. During this massage, J.M. reached under K.M.'s shirt and made skin-to-skin contact. J.M. touched K.M.'s bra strap during the massage. The massage stopped when K.M. got up to play a different game.

[5] Later that same day, K.M. and G.M. decided to watch a movie. Having seen the movie several times, K.M. soon got bored and decided to go into the kitchen to play a game on the computer. While K.M. and J.M. were alone in

the kitchen, J.M. walked over to K.M. and started massaging her back. He again "went under [her] shirt." DCS Ex. A, 44:00-44:05. K.M. tried to "squirm away," but J.M. continued to massage her back. DCS Ex. A, 36:40-37:00. K.M. eventually told J.M. that she "only like[s] massages on [her] feet." DCS Ex. A, 37:00-37:15, 47:25-48:25. J.M. said "okay" and started to massage K.M.'s feet with a vibrating massage tool. DCS Ex. A, 48:10-49:15. At some point, J.M. began massaging K.M. with his hand which he moved "up and up and up" her leg. DCS Ex. A, 49:15-50:00. He continued massaging up to what K.M. described as the end of her leg in her groin area. K.M. reported that J.M. was massaging her on top of her clothes "very close to the vaginal area" and "very close to those areas that we teach children that they shouldn't be touched." Appellant's App. Vol. IV p. 230. J.M. stopped when the movie ended and G.M. came into the room.

[6] On the third day detailed by K.M., J.M. massaged K.M.'s feet while she was watching a movie at G.M.'s house. J.M. also massaged another female friend of K.M.'s who was present. J.M. used different massage tools on the children. In addition to the foot massage, at some point while K.M. was at his home, J.M. again patted K.M. on the buttocks. With regard to touching her buttocks, K.M. reported that J.M. "just kept doing it," "over and over." DCS Ex. A, 41:15-41:20, 42:20-42:50. K.M. "did not like" when J.M. touched her buttocks "at all," but did not believe she could tell J.M. to stop. DCS Ex. A, 37:50-38:05, 39:00-39:15.

On October 18, 2017, K.M. was watching television with her father when a news story about Harvey Weinstein came on. K.M.'s father reminded her that she could talk to either he or her mother "about anything." Appellant's App. Vol. IV p. 138. Approximately forty-five minutes later, K.M. told her parents that J.M. had been massaging her. The next day, K.M. told her mother that J.M. had also been patting her on the buttocks.

K.M.'s parents reported K.M.'s allegations to the police. The allegations were also reported to DCS. As part of the investigation into K.M.'s allegations, Indianapolis Metropolitan Police Detective Gregory Norris interviewed J.M. J.M. admitted to touching K.M. on the arms, shoulders, stomach area, back, legs, and feet. J.M. also admitted to touching K.M.'s thighs down to the knees and up to where the leg meets the torso. J.M. stated that he "enjoyed" giving children massages and that "it was just organic how it came about." Appellant's App. Vol. IV pp. 95, 92. J.M. also admitted that he touched K.M.'s buttocks. A DCS case manager subsequently substantiated K.M.'s a claim of sexual abuse. At J.M.'s request, DCS conducted an administrative review of the case manager's decision to substantiate the complaint, and on January 23, 2018, upheld the substantiation.

On February 21, 2018, J.M. appealed the administrative decision. On April 23, 2018, the ALJ stayed the matter pending the outcome of criminal charges based on the same facts and circumstances as the substantiated report of child abuse. On August 15, 2018, J.M. pled guilty and was sentenced to four counts of

battery on a person less than 14 years of age, each a Level 6 felony, three of which related to K.M.[1]

[10] On August 21, 2018, the ALJ lifted the stay on the appeal proceedings. On February 28, 2019, the ALJ held a hearing regarding J.M.'s administrative appeal and took the matter under advisement. On March 19, 2019, the ALJ issued its decision upholding the substantiation of child abuse against J.M.

[11] On April 16, 2019, J.M. filed a petition for judicial review. On December 17, 2019, the trial court issued a written order denying J.M.'s petition. J.M. filed a motion to correct error on January 16, 2020. The trial court held a hearing on February 26, 2020, and took the matter under advisement. On May 4, 2020, the trial court granted the motion to correct error and ordered DCS to classify the report of child abuse against J.M. as unsubstantiated.

## Discussion and Decision

[12] DCS appeals the trial court's order granting J.M.'s motion to correct error.

> We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. *Jocham v. Sutliff*, 26 N.E.3d 82, 85 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *In re Marriage of Dean*, 787

---

[1] J.M. was initially charged with numerous counts of child molestation, but, pursuant to the terms of his plea agreement, pled guilty to four lesser counts Level 6 felony battery.

N.E.2d 445, 447 (Ind. Ct. App. 2003), *trans. denied*. However, where the issues raised in the motion are questions of law, the standard of review is de novo. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*.

*Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017). On appeal, DCS argues that the trial court abused its discretion in granting J.M.'s motion to correct error because the trial court's decision is against the logic and effect of the facts and circumstances and misapplied the applicable authority relating to review of an administrative agency's decision.

[13] As the Indiana Supreme Court has held, "[a]ppellate courts stand in the same position as that of the trial court when reviewing a decision of an administrative agency." *Filter Specialists, Inc. v. Brooks*, 906 N.E.2d 835, 844 (Ind. 2009).

> Judicial review under the Indiana Administrative Orders and Procedures Act is limited, and the person seeking judicial review bears the burden of establishing the agency action's invalidity. Ind. Code § 4-21.5-5-14(a). We must defer to the agency's expertise, and we may set aside an agency action only if the challenger shows that he has been prejudiced by a decision that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d). We do not try the case de novo, reweigh the evidence, judge witness credibility, or substitute our judgment for that of the agency. Ind. Code § 4-21.5-5-11. We are bound by the agency's findings of fact if those findings are supported by substantial evidence. *Ind. Civil Rights Comm'n v. S. Ind. Gas &*

*Elec. Co.*, 648 N.E.2d 674, 679 (Ind. Ct. App. 1995), *trans. denied*. "Substantial evidence is more than a scintilla, but something less than a preponderance of the evidence." *State v. Carmel Healthcare Mgmt., Inc.*, 660 N.E.2d 1379, 1384 (Ind. Ct. App. 1996) (citation omitted), *trans. denied*.

*Ind. Dep't of Nat. Res. v. Prosser*, 132 N.E.3d 397, 401 (Ind. Ct. App. 2019), *trans. denied*. Further,

> [w]hile "[w]e are not bound by the [agency's] conclusions of law, … '[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.'" *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 123 (Ind. 2012) (third alteration in original) (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000)). *See also Nat. Res. Comm'n v. Porter Cty. Drainage Bd.*, 576 N.E.2d 587, 588 (Ind. 1991) (stating that "the interpretation of a statute by the administrative agency charged with its enforcement is entitled to great weight"). "In fact, 'if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation.'" *Jay Classroom Teachers Ass'n v. Jay Sch. Corp.*, 55 N.E.3d 813, 816 (Ind. 2016) (citation omitted).

*Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019) (first set of brackets added, others in original).

[14]   In this case, J.M. sought judicial review of the ALJ's decision affirming DCS's determination that the allegations that he had committed child molestation were substantiated. Indiana Code section 35-42-4-3(b) provides that

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Level 4 felony.

In order to substantiate a complaint of child abuse based on an alleged act of molestation, the fondling or touching of the child must include either the buttocks, genitals, or female breasts. *See* Ind. Code §§ 31-9-2-14(b), 31-9-2-133 (b).

[15] From the outset, it has been uncontested that J.M. touched then-ten-year-old K.M. on the buttocks on numerous occasions on at least three separate days. The question was and remains to be whether the evidence is sufficient to prove that J.M. acted with the "intent to arouse or to satisfy the sexual desires of either" K.M. or himself. *See* Ind. Code § 35-42-4-3(b). Although initially concluding that the evidence did support the ALJ's determination that J.M. acted with the requisite intent, in granting J.M.'s motion to correct error, the trial court ultimately decided that it did not. The question before us on appeal is whether the trial court abused its discretion in reaching this decision.

[16] While the pats on the buttocks, in and of themselves, may not demonstrate an intent to arouse, J.M.'s collective behavior does. The ALJ found that "it is evident that J.M. began touching K.M. in more and more intrusive and sexual ways, progressing over time from patting on the buttocks, to rubbing her back, to rubbing her stomach near her breasts, to her legs and on to her upper thighs." Appellant's App. Vol. II p. 40. The ALJ found that J.M. "engaged in what is

known in the field of child welfare as 'grooming'; actions taken over a period of time to make a child comfortable with, and to like, the adult, leading to physical contact, and then ever-increasing levels of sexual contact." Appellant's App. Vol. II p. 42. J.M.'s grooming behavior included increased offers to care for K.M.; comments to her parents about K.M.'s personality, including that she would speak up if she did not like a particular behavior/situation; offers for K.M. to sleep over at his home, then, once K.M. was present, offering a sleeping arrangement that had K.M. and his son sleeping in the same room as him; and the previously-described touchings and massages. In describing how K.M. had suffered negatively following the interactions with J.M. that resulted in the inappropriate touchings, the ALJ found that "[w]hile the victim's perception of any event is not sufficient to prove the intent of the actor, it is highly relevant that the victim, the only other witness to the event, perceived it as sexual." Appellant's App. Vol. II p. 40.

[17] Although J.M. denied any sexual intent, he admitted both in his interview with police and before the ALJ that he has "boundary issues" and indicated that he "enjoyed giving the children massages as he believed they enjoyed them and he gains satisfaction from giving joy to others." Appellant's App. Vol. II p. 40. As the ALJ noted, however, "[t]here was no evidence that K.M. or any other child ever expressed enjoyment of the massages beyond foot rubs and hair brushing." Appellant's App. Vol. II p. 40. In fact, there is evidence of the opposite as K.M. expressly told J.M. that she only liked foot massages and J.M.'s son asked J.M. to stop patting him on the buttocks. Furthermore, as the ALJ

found, "a massage is not the same thing as touching on or near the breasts, buttocks and genitalia." Appellant's App. Vol. II p. 42.

[18] Review of the record reveals that the ALJ's factual findings are supported by the evidence. Upon reaching these factual findings, the ALJ considered the totality of the evidence and concluded as follows:

> J.M.'s actions of rubbing a ten year old child on her upper stomach and upper legs, and patting her on her buttocks were more likely than not done with intent to arouse or satisfy his sexual desires. His explanations, while possible, are simply not plausible. Rubbing a female child near her breasts and her genitalia, and patting her on her buttocks, cannot reasonably be found to have been innocent and merely an attempt to give the child enjoyment. J.M. claimed that he simply did not recognize the inappropriateness of his actions. That is extraordinarily unlikely. No person of sound mind, and there is no question that J.M. is of sound mind, living in America in the 21st century could fail to recognize the inherent inappropriateness and sexual nature of touching a non-related child on or near such private areas. Whatever boundary issues J.M. may have cannot explain away the touching of a child in this manner. K.M. never asked to be touched in these areas, never claimed to enjoy, and specifically said she only wanted to be touched on her feet, or her hair. Unless there is some medical justification, there is no rational reason to rub another person's upper legs or a female's stomach or pat their buttocks, other than sexual. It is more likely that not that J.M. touched K.M. with intent to arouse or satisfy his sexual desires.

Appellant's App. Vol. II p. 41. The ALJ further concluded that

> Due to the requirements in IC 31-9-2-14(b) and IC 31-9-2-133(b), touching on most parts of the body, even if done with intent to

satisfy or arouse sexual desires, is insufficient to base as sexual abuse substantiation. In this case, only the touching by J.M. on K.M.'s buttocks might form the basis for a sexual abuse substantiation. However, the totality of the evidence, including the sexual nature of the touching of K.M.'s legs and stomach, informs and points to his intent in touching K.M.'s buttocks. Given that evidence, it is far more likely than not that J.M.'s touching of K.M.'s buttocks was done with the intent to arouse or satisfy his sexual desires[.]

Appellant's App. Vol. II pp. 43–44. The ALJ also determined that J.M.'s explanations for his behavior were not credible.

[19] In seeking judicial review of the ALJ's conclusion, J.M. effectively asked the trial court to look at his act of patting K.M.'s buttocks in a vacuum and ignore his other actions involving K.M. The ALJ had previously rejected a similar request, concluding: [J.M.] had an innocent explanation for each of his action[s], which explanations may have been plausible in a vacuum. Taken together, however, they form a pattern and show, far more likely than not, that his actions were sexual in nature." Appellant's App. Vol. II p. 44.

[20] In granting J.M.'s motion to correct error, the trial court seems to have accepted J.M.'s request and reviewed his behavior in isolation, reweighing both the evidence and the ALJ's determination that J.M.'s explanations for his behavior were not credible. The applicable standard of review makes it clear that the trial court was not permitted to do so, and we conclude that by doing so, the trial court misapplied the law. *See Prosser*, 132 N.E.3d 397, 401 (citing Indiana Code section 4-21.5-5-11 for the proposition that in completing judicial

review, we "do not try the case de novo, reweigh the evidence, judge witness credibility, or substitute or judgment for that of the agency."). As such, we further conclude that the trial court abused its discretion by granting J.M.'s motion to correct error and by ordering DCS to classify the reported abuse as unsubstantiated.

[21] The judgment of the trial court is reversed.

Kirsch, J., and May, J., concur.