

FILED

Jun 06 2023, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Kyle Andrew Swick
Danville, Indiana

ATTORNEYS FOR APPELLEE

Darryn L. Duchon
Indianapolis, Indiana

David W. Stone IV
Anderson, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

H.P. and S.P.,
*Appellants-Petitioners,*

v.

G.F.,
*Appellee-Plaintiff*

June 6, 2023

Court of Appeals Case No.
22A-AD-2674

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause No.
32D01-1904-AD-22

**Opinion by Chief Judge Altice**
Judges Riley and Pyle concur.

**Altice, Chief Judge.**

## Case Summary

[1]     H.P. and S.P. (collectively, Adoptive Parents) appeal the trial court's order

granting grandparent visitation to G.F. (Grandfather).  Adoptive Parents

present several issues for our review, but we need address only one: Did Grandfather have standing to seek grandparent visitation rights at the time he filed his petition?

We reverse.

## Facts & Procedural History

K.F. (Child) was born in September 2016 to B.R. (Mother) and T.F. (Father). Grandfather and S.P. are Child's biological paternal grandparents.[1] Both Mother and Father had serious substance abuse issues, resulting in Child becoming a ward of the State through CHINS proceedings at the beginning of 2017. The Indiana Department of Child Services (DCS) placed Child in relative care with Adoptive Parents during the week and Grandfather on the weekends. Mother's and Father's parental rights were terminated in September 2018.

Following termination of parental rights, DCS continued Child's placement in the homes of Grandfather and Adoptive Parents. At a CHINS hearing in November 2018, which Grandfather attended, the trial court ordered a plan of adoption. Adoptive Parents then began steps to adopt Child with the consent of DCS. The adoption was granted on May 17, 2019, without any notice provided to Grandfather.

---

[1] Grandfather and S.P. were married between 1985 and 1991 and had two children – Father and another son. After their divorce, S.P. married H.P. in 1999, and they had a daughter in 2001.

[5] S.P. informed Grandfather of the finalized adoption around August 2019. Notwithstanding the adoption, Adoptive Parents continued to voluntarily give Grandfather regular weekend visitation with Child. Typical visitation would be every weekend from Friday to Monday. Grandfather also traveled with Child from time to time. He formed a strong bond with Child throughout her young life and helped support her by providing clothing, shoes, play equipment, and other items.

[6] In the years after the adoption, Child's biological parents died – Father in July 2021 and Mother in January 2022. Around the time of Mother's death, though unrelated, Adoptive Parents began to develop concerns about Grandfather's time with Child – the details of which are not relevant to our disposition of this appeal. The last visit they permitted between Grandfather and Child ended on January 10, 2022.

[7] On April 6, 2022, Grandfather filed a Motion to Reopen Adoption and Intervene, arguing that he had a right to pursue grandparent visitation because he was not provided with proper notice of the adoption. After a contested hearing, the trial court granted Grandfather's motion to intervene on June 10, 2022. Grandfather then filed a Motion for Grandparent Visitation, which Adoptive Parents opposed on the merits as well as on the basis that reopening the adoption proceedings – nearly three years after the adoption was granted – was improper.

[8] The trial court held an evidentiary hearing on October 20, 2022. Then, on November 17, 2022, the trial court issued its order awarding visitation to Grandfather on alternating weekends from Friday after school until Monday morning, or 6:00 p.m. and 9:00 a.m., respectively, when school is not in session.

[9] Adoptive Parents have timely appealed, and their request for a stay of the visitation order was granted by this court on November 18, 2022. The stay remains in effect following the denial of Grandfather's motion to reconsider. Additional information will be provided below as needed.

## Discussion & Decision

[10] Grandfather sought and obtained visitation under the Grandparent Visitation Act (the Act), which was enacted by the Indiana General Assembly in 1982 and continues to provide the exclusive basis for a grandparent to seek visitation with their grandchildren. *See In re Visitation of B.A.A.*, 173 N.E.3d 689, 691 (Ind. Ct. App. 2021). The Act is now codified at Ind. Code Chap. 31-17-5. Because it is in derogation of the common law, we strictly construe the Act. *Jocham v. Sutliff*, 26 N.E.3d 82, 85 (Ind. Ct. App. 2015), *trans. denied*. If a grandparent lacks standing under the Act, their petition must be dismissed. *Id*.

[11] I.C. § 31-17-5-1(a)(1) provides a grandparent with the right to seek visitation if the child's mother or father is deceased, and pursuant to I.C. § 31-17-5-3(b), a petition for grandparent visitation must be filed, if at all, before an adoption

decree is entered.[2]  For purposes of the Act, I.C. § 31-9-2-77 defines a "grandparent" as including: "(1) the adoptive parent of the child's parent; (2) the parent of the child's adoptive parent; and (3) the parent of the child's parent."

[12]  When Grandfather petitioned for visitation, Child's parents – Adoptive Parents – were alive and well and had been parenting Child for nearly three years. Further, when Adoptive Parents adopted Child, Child's biological parents were still alive but had no parental rights to Child.  And Grandfather was no longer "the parent of child's parent" once his son's parental rights were terminated. *See In re G.R.*, 863 N.E.2d 323, 326 (Ind. Ct. App. 2007) ("In sum, at the moment Mother's rights were terminated, Grandmother no longer had standing to pursue visitation rights as to G.R.").  Thus, by the time Grandfather finally got around to filing his petition for visitation, he had lacked a legally recognized grandparent relationship with Child for several years and no longer had standing to seek grandparent visitation.  *See Jocham*, 26 N.E.3d at 87 ("Following the adoption, Sutliff remained K.J.'s grandmother biologically, emotionally, and morally, but at the time she filed her petition for grandparent visitation, she was no longer legally his grandparent."); *In re Marriage of J.D.S. &*

---

[2] Already-established rights under the Act survive the adoption of a child by a person biologically related to the child as a grandparent.  I.C. § 31-17-5-9(2)(A).  This provision is not at issue here because Grandfather had no existing grandparent visitation rights at the time of the adoption, nor had he filed a petition to pursue any.  *See Jocham*, 26 N.E.3d at 88 ("Because Sutliff had not sought visitation rights pursuant to section 31-17-5-1 prior to the adoption, no right to visitation had already been given by a court, and she had no visitation rights for section 31-17-5-9 to protect.").

*A.L.S.*, 953 N.E.2d 1187, 1190 (Ind. Ct. App. 2011) ("Because she did not file her petition until after Father's parental rights were terminated, Grandmother no longer had standing as the parent of the children's parent, and there were no existing visitation rights upon which to bootstrap continued visitation in the wake of the adoption."), *trans. denied*; *In re G.R.*, 863 N.E.2d at 326 (biological maternal grandmother had no standing to bring petition after biological mother's paternal rights were terminated).

[13] Grandfather attempts to sidestep the standing issue by taking aim on the adoption proceedings. That is, Grandfather argues that as a person having "lawful custody" of Child, which he shared with Adoptive Parents during the CHINS proceedings, his written consent to the adoption was required and he was entitled to legal notice of the adoption proceedings. Grandfather reasons that if he received proper notice, he would have been able to timely petition for visitation under the Act before the adoption was granted.

[14] Ind. Code § 31-19-9-1(a)(3) provides that "a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by … [e]ach person, agency, or local office having lawful custody of the child whose adoption is being sought." Our Supreme Court has interpreted the term "lawful custody" as used in this statute to "encompass more circumstances and familial arrangements than court-ordered legal custody." *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014). In explaining its broad interpretation of the term, the Court observed:

The General Assembly's deliberate choice to require those with lawful custody of a child to be given notice of and an opportunity to withhold consent to the child's adoption likely reflects its policy judgment that, in determining whether the adoption is in the child's best interests, trial courts *should* hear from the party with care, custody, and control of the child in question – regardless of whether the party's responsibility derives from a court order. Moreover, those with lawful custody of the child are exactly who trial judges *want* to hear from as they make one of the toughest decisions they are called upon to decide. And who better to know and speak to the child's best interests than the person(s) functioning as the child's parent(s). As the statute contemplates, a caregiver serving as a child's lawful custodian needs, and deserves, to have a voice in the child's adoption proceedings.

*Id*. at 585-86 (emphases in original).

[15] The determination of whether an individual has lawful custody of a child is fact-sensitive and must be decided case-by-case. *Id*. at 586. In this case, the trial court found that Grandfather "housed, financially supported, met the needs of, formed a bond with and cared for [Child] on a weekly basis." *Appendix* at 15. Based on this consistent care and support throughout the CHINS proceedings and leading up to the adoption, the trial court determined that Grandfather shared "lawful custody" of Child with S.P. and that he had a right to notice and an opportunity to withhold his consent.

[16] Adoptive Parents counter by arguing that Grandfather had not been Child's primary caregiver for some time. Child had lived with Adoptive Parents since sometime in 2017 and only visited Grandfather on the weekends. Adoptive

Parents seem to suggest that to be considered a lawful custodian one must meet the statutory definition of a de facto custodian at the time the petition for adoption is brought. We do not believe that the Supreme Court intended such a narrow construction, but we need not determine whether the trial court properly concluded that Child was in Grandfather's lawful custody.

[17] Even assuming that Grandfather was a lawful custodian of Child entitled to notice and an opportunity to contest the 2019 adoption, his 2022 challenge to the adoption decree is plainly time-barred. I.C. § 31-19-14-4 provides limitations on direct or collateral attacks of adoption decrees:

> After the expiration of the period described in section 2 of this chapter, neither a person whose parental rights are terminated by the entry of an adoption decree nor any other person may challenge the adoption decree even if:
>
> > (1) notice of the adoption was not given; or
> >
> > (2) the adoption proceedings were in any other manner defective.

The outer bounds of a challenge are six months after the entry of the adoption decree or one year after the adoptive parents obtain custody of the child, whichever is later. I.C. § 31-19-14-2. Grandfather's challenge to the adoption decree, nearly three years after it was entered, was far too late.[3]

---

[3] Even after he received actual notice in August 2019 of the finalized adoption, Grandfather waited over two years to reopen the adoption and seek grandparent visitation. Moreover, any suggestion by Grandfather that

[18] Grandfather asserts that he is not seeking to set aside the adoption and that he only wants to have grandparent visitation. Even so, this does not get him past the obstacle of the above statute of limitations.[4]

[19] In sum, we hold that Grandfather no longer has standing to seek grandparent visitation and that his attempt to regain standing by attacking the adoption decree is fruitless given the applicable statute of limitations. Accordingly, the trial court erred by addressing the merits of Grandfather's claim for grandparent visitation under the Act. It may very well be that continued contact with Grandfather is in Child's best interests, but at this point, such a determination must be left to her parents, not the court.

[20] Judgment reversed.

Riley, J. and Pyle, J., concur.

---

Adoptive Parents intentionally and fraudulently concealed the adoption until the statute of limitations had run is without merit, as Grandfather's own testimony reveals that S.P. informed him of the adoption well within the statute of limitations.

[4] Grandfather directs us to a case from Florida in which the Florida Supreme Court held that the grandparents could intervene and reopen the adoption case where they had not received notice of the adoption proceedings despite being interested parties due to their court-ordered visitation rights that existed at the time of the adoption. *In re Adoption of a Minor Child*, 593 So.2d 185 (Fla. 1991). Even if we found it helpful to look to Florida caselaw on this subject, which we do not, we note that Grandfather has ignored key details from that case. That is, the court held that in order to have an opportunity to assert their rights, if any, the grandparents "must first vacate the final judgment of adoption." *Id*. at 190. The court then held that grandparents were permitted to "attack [the] final judgment" because they filed within the one-year statute of repose. *Id*.